*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2013 UT 1**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BRETT PEREZ, an individual,
*Petitioner,*

*v.*

SOUTH JORDAN CITY, a Utah municipal corporation, and
SOUTH JORDAN CITY APPEAL BOARD,
*Respondents.*

No. 20120019
Filed January 15, 2013

Original Proceeding in the Court of Appeals

Attorneys:

Ryan B. Hancey, Salt Lake City, for petitioner

Camille N. Johnson and Maralyn M. English, Salt Lake City,
for respondents

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1    South Jordan City dismissed Brett Perez from his position
as a city police officer. He appealed to the South Jordan City Ap-
peal Board, which affirmed his dismissal. Perez then appealed the
Board's decision to the Utah Court of Appeals. That court dis-
missed for lack of jurisdiction, concluding that Perez's petition for
review was untimely under Utah Code section 10-3-1106(6).

¶2    We reverse, under a standard clarifying the nature of "the
issuance of [a] final action or order" triggering the thirty-day pe-
riod for a petition for review under section 1106(6). After finding
Perez's petition timely under the clarified statutory standard, we
remand for consideration of the merits of Perez's appeal.

I

¶3   Petitioner Brett Perez's fourteen-year employment as a South Jordan City police officer was terminated on November 12, 2009. Perez had allegedly violated the City's high-speed chase policy in a May 2009 incident, and he also had several prior disciplinary actions on file. Perez appealed his termination to the South Jordan City Appeal Board, which conducted a hearing in late May 2010.

¶4   The Appeal Board affirmed the City's termination decision in a ruling entitled "Decision and Order" dated June 7, 2010. The Order stated: "The Board hereby affirms the decision . . . to terminate Officer Perez' employment . . . . The Board requests the City recorder certify this decision in accordance with the South Jordan City Employee Handbook."

¶5   The Order was transmitted to Anna West, the City's recorder, on June 10, 2010. That same day, she certified the Order as final and mailed a copy to Perez, with an attached cover letter that stated:

> Enclosed is a copy of the official Certified Decision & Order of the Employee Appeals Board Hearing held May 26, 2010 for Brett Perez v. South Jordan City that was delivered to my office today, June 10, 2010.
>
> Section 4-06(5)e(4) of the South Jordan Employee Handbook states, "*any final action or order of the board may be appealed by either the employee or the City to the Utah Court of Appeals by filing with that court a notice of appeal no later than 30 days from the date of the issuance of the final action or order of the board.*"

¶6   Perez filed a petition for review with the Utah Court of Appeals on July 9, 2010. In a split decision, that court dismissed for lack of jurisdiction, concluding Perez's petition was untimely under Utah Code section 10-3-1106(6) because it had been filed more than thirty days after the date (June 7) appearing on the Appeal Board's Decision and Order. *See Perez v. S. Jordan City*, 2011 UT App 430, ¶¶ 1, 8, 268 P.3d 877.

¶7   The majority opinion (per Judge Davis) reasoned by analogy from our decision in *Dusty's, Inc. v. Utah State Tax Commission*,

842 P.2d 868, 870 (Utah 1992), which interpreted the Utah Administrative Procedures Act to require an appeal within thirty days of "'the date [an administrative agency's] order bears on its face.'" 2011 UT App 430, ¶ 4 (quoting *Dusty's*, 842 P.2d at 870). Finding "no reason to interpret the Utah Municipal Code any differently," the court of appeals' majority held that "the thirty-day time period for filing a petition for review of the [South Jordan City Appeal] Board's decision commenced as of the date of the order" (June 7, 2010) and thus that the "petition for review, filed on July 9, 2010, was untimely." *Id*. ¶¶ 4, 8. In so doing, the majority "stressed the importance of establishing clear deadlines for appeals"—a policy that in its view was "advanced by measuring filing deadlines from the date a decision is issued rather than the date it is mailed." *Id*. ¶ 4.

¶8    Judge Orme dissented. He did "see a reason to interpret the Utah Municipal Code . . . differently from the Utah Administrative Procedures Act." *Id*. ¶ 10 (Orme, J., dissenting). Specifically, Judge Orme noted that the Municipal Code required a decision of the Appeal Board to be "certified to the City Recorder" before it could be final, and asserted that this "requirement . . . is analogous to the requirement that judgments be filed with the court clerk before they become final and appealable." *Id*. (citing UTAH R. CIV. P. 58A(b)–(c)). Because the Board's decision in this case was not certified to the city recorder until June 10, Judge Orme deemed Perez's review petition timely. *Id*. ¶¶ 10–11. And as to the policy of certainty in the appeal process, Judge Orme suggested that a rule treating certification as issuance of a final order would "promote[] just as much certainty as the majority's view that issuance equates to the date of signing by the Board." *Id*. ¶ 12.

¶9    Perez filed a petition for certiorari. We granted that petition, and now consider the timeliness of Perez's appeal. Because the dispositive questions are purely legal ones—concerning the construction of section 1106(6)—our review is de novo. *See Manzanares v. Byington (In re Adoption of Baby B)*, 2012 UT 35, ¶ 41, __ P.3d __.

II

¶10  Under the Utah Municipal Code, a petition for review must be filed "within 30 days after the issuance of the final action or order of the appeal board." UTAH CODE § 10-3-1106(6)(a)–(b). As

with other procedures for appeals, the key threshold question under this provision is what triggers the time for appeal. A clear answer to that question is crucial, as the requirement of a timely appeal is jurisdictional. *See Goggin v. Goggin*, 2011 UT 76, ¶ 21, 267 P.3d 885.

¶11 In clarifying the statutory trigger for the appeal period under the Municipal Code, we look first to the rules and cases governing analogous procedures in other contexts. Building on those principles, we construe the Municipal Code in a manner that deems the order in this case to have issued on June 10, not June 7. We accordingly reverse the court of appeals' decision to the contrary, and remand for a determination of the merits of the appeal.

A

¶12 Because missteps in timing can deprive an appellate court of jurisdiction, the law takes care to define the event triggering the appeal period with certainty. For district court orders, for example, our rules require an appeal "within 30 days after the date of entry of the judgment or order appealed from," UTAH R. APP. P. 4(a), and clarify that "[a] judgment is complete and shall be deemed entered for all purposes . . . when it is signed and filed" with the clerk, who is required to "immediately record the judgment in the register of actions and the register of judgments," UTAH R. CIV. P. 58A(c). This rule advances the core policies of certainty and clarity by designating a clear date—filing with the clerk—that starts the appeal clock running. It also assures dissemination to the public—by requiring the clerk to immediately record the judgment on the public register.

¶13 The Administrative Procedures Act (APA) prescribes a parallel requirement for appeals from administrative actions. It requires "a petition for judicial review of final agency action" to be filed "within 30 days after the date that the order constituting the final agency action is issued." UTAH CODE § 63G-4-401(3)(a).

¶14 We construed this provision in *Dusty's, Inc. v. Utah State Tax Commission*, 842 P.2d 868 (1992). The question in *Dusty's* concerned the timeliness of a petition for review of a final Tax Commission order signed and dated March 25, 1992, bearing a statement reiterating that "[y]ou have thirty (30) days after the date of this order to file . . . a petition for judicial review." *Id.* at 868–70. Although the order was dated March 25, it was not mailed until

the next day, and it was not received by the petitioner until March 30. *Id.* at 869. Petitioner waited until April 27 to file the petition for review, claiming to have preserved a timely appeal because the petition was filed within thirty days of receipt of the Tax Commission's order. *Id.* at 868–69.

¶15 We disagreed, concluding that the order had "issued on the date it bore on its face" and noting that "[t]he Commission itself defined the date of issue when it postscripted the order with the usual legend found in all Tax Commission orders." *Id.* at 870, 872. In so holding, we explained that the Commission had "accorded [the petitioner] notice of the time limitations, and the chosen procedure was well within the bounds of due process notions," giving the petitioner "actual and constructive notice" which it "ignored . . . at its peril." *Id.* at 870.

¶16 Thus, our analysis in *Dusty's* again vindicated the policies of clarity and certainty. By tying the appeal period to the date of issuance and not receipt, we assured a clear timeframe for calculation of the appeal period. And because the order was required by law to be disseminated to the parties, we likewise provided a mechanism for issuance and notice to the public.

B

¶17 The same policies underlying our broader notice of appeal jurisprudence also inform our construction of the appeal framework prescribed in section 1106(6) of the Municipal Code. And those policies—together with the plain language of the governing statute—sustain a significant distinction between the outcome in *Dusty's* and the decision we reach here.

¶18 For reasons explained below—and unlike the order in *Dusty's*—the Appeal Board's order was not "issued" as of the date that it "bore on its face" (June 7). On that date, rather, the order was in the posture of a district court order that had been signed by a judge but not yet filed with the clerk. And because the order had not issued as of June 7, the appeal period was not triggered on that date. Instead, we deem the Appeal Board's order to have issued on June 10, and thus conclude that Perez's appeal was timely.

1

¶19 The key statutory question in *Dusty's* and in this case is the notion of "issuance" of an appealable order. In legal parlance, issuance does not occur without attempted communication or distribution. *See* BLACK'S LAW DICTIONARY 908 (9th ed. 2009) (defining to "issue" as "[t]o be put forth officially" or "[t]o send out or distribute officially"). Thus, securities are "issued" when they are made available to investors, not when their underlying documentation is completed. And, more pointedly for present purposes, our opinions are not said to be "issued" on the day that our drafting, voting, and copywork have come to a close, but when we undertake efforts to disseminate them to the public.

¶20 We read the Municipal Code to incorporate this conception of "issuance." To trigger a right of appeal, an order must have "issued"—meaning that the decisionmaking body must not only have completed its work and signed off on its decision, but also have undertaken steps to communicate or disseminate the decision to the public. That construction is not only consistent with the plain text of the statute; it also advances the core appellate policies of clarity and certainty, since a signed, final order cannot fairly trigger the thirty-day appeal clock if it has not yet issued but is still lingering on the desk of the decisionmaker.

¶21 That is not to say that issuance requires *receipt*. Our opinions issue on the date they are published, whether or not the parties (or anyone else) may receive or read them on that date. And the same goes for district court orders. Such orders, by rule, are deemed *entered* (thus triggering the thirty-day clock for an appeal) as soon as they are "filed" with the clerk of court. UTAH R. CIV. P. 58A. This rule fulfills the policies of certainty and clarity—by designating an objectively clear, verifiable date that starts the appeal clock running. And it also initiates a process that will provide notice to interested parties in due course—by requiring the clerk to "immediately record the judgment in the register of actions and the register of judgments." *Id.*

2

¶22 This understanding of the meaning of "issuance" lays the groundwork for explaining our holding in *Dusty's*, and for justifying the different result that we reach here. In *Dusty's* the order under consideration specified clearly the date of its issuance and

the timeframe for appeal. *Dusty's, Inc.*, 842 P.2d at 870. And the date stated on the face of the order was the date of the first step in the order's dissemination by the Tax Commission to the public,[1] so in that sense the order had been "issued" even if it was not actually *received* until a few days later. Thus, the question in *Dusty's* was not whether or when the Tax Commission order had issued, but only whether the appeal clock tolled pending the parties' receipt of the order. And of course that question was easy to answer (in the negative)—both because the statutory appeal time begins on *issuance* and not *receipt* and because a contrary rule would invite self-serving gamesmanship that would upset the certainty policies undergirding the statutory scheme.[2]

¶23 These same considerations dictate a different result in this case, however. Here there was no "issuance" on June 7. From all that appears, that was only the date the decisionmaking body internally signaled the completion of its work, not a date constituting a step toward dissemination of the order to the public. As of June 7, the Appeal Board members signed the order reflecting their decision on the Perez matter, but they did nothing more. And, significantly, they were not required by law to do anything more at that time—certainly not anything in the direction of issuance or dissemination of their decision to the public. In fact, without the steps taken by the recorder on June 10, the signed order could have remained on the Appeal Board's desk indefinitely because the relevant statute does not require that an order be communicated to an affected party by a certain date. Thus, June 10

---

[1] An agency is required to "issue a written order on review" in responding to a party who seeks review of an agency order. *See* UTAH CODE § 63G-4-301(6)(a). Such an order must be "signed by the agency head or by a person designated by the agency for that purpose" and it "shall be mailed to each party." *See id.* § 63G-4-301(6)(b). The order must set forth "a notice of any right of further administrative reconsideration or judicial review available to aggrieved parties," *see id.* § 63G-4-301(6)(c)(vii) and "the time limits applicable to any appeal or review," *see id.* § 63G-4-301(6)(c)(viii).

[2] *Cf. Tri-Par Invs., L.L.C. v. Sousa*, 680 N.W.2d 190, 199 (Neb. 2004) (indicating that rules allowing for the possibility of gamesmanship are inimical to certainty).

was the only date that could meaningfully be said to constitute a date of "issuance" under the circumstances of this case.

¶24 For this reason, Perez is in a much stronger position than the petitioner in *Dusty's*. He is not asking the court to read *issuance* to constitute *receipt*, but simply to enforce the accepted meaning of *issuance*. When Perez received the June 7 order, he reasonably and appropriately concluded that the order had not issued on the date on its face. Indeed, while the face of the order cut against the timeliness of the appeal in *Dusty's*, *see* 842 P.2d at 868, it cuts in Perez's favor here. This order, after all, expressly contemplated a *future act* of issuance or dissemination—in the form of a "request[]" that "the City recorder certify this decision in accordance with the South Jordan City Employee Handbook."[3] Thus, the natural conclusion for someone in Perez's position would have been the one he apparently made—that the order was issued not on June 7, when it apparently was still within the internal control of the Appeal Board and not yet certified to the recorder for issuance to the public, but on June 10.[4]

---

[3] For this reason, there may be an alternative ground for concluding that the June 7 order did not trigger the appeal period: It was not "final" as of that date. *See* UTAH CODE § 10-3-1106(6)(a). This was the basis of Judge Orme's dissenting position below. To the extent the order contemplated an additional step—of certification by (or to) the City Recorder—it may not yet have been final, and thus not subject to appeal on June 7. In so noting, however, we need not and do not suggest—as Judge Orme did—that the statutory requirement of certification is a prerequisite to an appeal or even a necessary requirement for finality. As the court of appeals' majority suggested, the provision for certification may simply be the specification of a deadline and not "an additional requirement for issuance to be complete." *Perez v. S. Jordan City*, 2011 UT App 430, ¶ 5, 268 P.3d 877. Yet although certification may not be a *necessary* step for finality, an order expressly calling for such certification (*by* a separate government actor on a future, unspecified date) seems *sufficient* to deprive such an order of finality.

[4] The cover letter accompanying the order must have appeared to confirm that conclusion. It indicated that the recorder had received the order from the Appeal Board on June 10 and mailed the order to Perez on the same day. Under the circumstances, the only

¶25 Under these circumstances, and given the terms of the order and the timing of its issuance, we conclude that this order was not issued until June 10, and uphold the timeliness of Perez's appeal on that basis. We accordingly reverse and remand to the court of appeals for an evaluation of the merits of this appeal.

III

¶26 The central problem in this case is that neither the Municipal Code nor the City's implementing rules prescribe clear standards for determining finality or issuance. A city wishing to adopt a different time standard for appeals under section 1106(6) presumably could do so by implementing a standard unambiguously defining both issuance and finality. And so long as the standard it adopts includes both a clearly marked trigger date for the appeal period and a mechanism for issuance of the decision to the public, the city could exercise discretion in prescribing the precise manner and means for calculation of the time for appeal. Our decision today stems from South Jordan City's failure to do so to date; it does not foreclose any adaptations going forward.

¶27 Thus, we do not suggest that a municipal appeal board order could never be "issued" as of the date it is signed. That result could be achieved by implementation of a procedure that tied the signed order to a process that would disseminate or publish the order to the parties. Thus, if a municipality adopted a mechanism like that set forth in rule 58A of the Utah Rules of Civil Procedure, under which its appeal board decisions were deemed issued upon being filed with a clerical official with the legal responsibility to place them immediately in a public register, then filing with the official could constitute issuance. Yet because South Jordan City had no provision for dissemination of the order in this case to the public, that order as it stood on June 7 had the same status as a district court order that has been signed by the judge but still sits

---

apparent "issuance" of the order would have been the June 10 mailing, and the cover letter's reference to the statutory requirement of an appeal within thirty days of "issuance of the final action or order of the board" must reasonably have been understood to be triggered by the June 10 date—as that date was the one designated on the face of the letter (as the date the opinion was "delivered" to the recorder and mailed to Perez).

on her desk—as yet unfiled with the clerk, and thus not entered or issued in a manner triggering the appeal period.

_____