*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 26**

IN THE

SUPREME COURT OF THE STATE OF UTAH

RON HEAPS and PHILLIP SYKES,
*Appellants,*

*v.*

NURICHE, LLC, DAVID HEAPS, LAVORN SPARKS, NORM CLYDE,
BRAD HOLIDAY, and DAVID PARKER,
*Appellees.*

No. 20130132
Filed January 30, 2015

Third District, Salt Lake
The Honorable Kate A. Toomey
No. 110909892

Attorneys:

Robert H. Wilde, Bruce M. Franson, Michael S. Wilde,
Salt Lake City, for appellants

Mark D. Tolman, Paul R. Smith, Salt Lake City, for appellees

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1    This appeal requires us to decide whether the Utah Payment of Wages Act (UPWA) imposes personal liability on the managers of a limited liability company for unpaid wages. The UPWA imposes liability for unpaid wages on all employers. On summary judgment, the district court found that LLC managers qualify as employers under the UPWA, but nevertheless held that they are not liable for unpaid wages. We affirm the district court's ruling on the alternative ground that LLC managers do not qualify as employers under the UPWA.

## BACKGROUND

¶2    In 2008, Ron Heaps and Phillip Sykes (collectively, Employees), along with others, founded Nuriche, LLC, a now-defunct limited liability company formed in Nevada and registered

to do business in Utah. Employees allege that the other founding members promised them compensation and other benefits in connection with their employment by Nuriche, but that Nuriche and the remaining managers refused to provide the promised compensation upon Employees' termination in 2011.

¶3 Shortly after being terminated, Employees filed their complaint in this matter. The complaint alleged that Nuriche and those on its board of managers, David Heaps, Lavorn Sparks, Norm Clyde, Brad Holiday, and David Parker[1] (collectively Managers), breached their agreement to pay Employees $150,000 in annual salaries and benefits. Employees also asserted a claim under the UPWA for failure to pay past-due wages following their termination.

¶4 Four of the five Managers—David Heaps, Lavorn Sparks, Norm Clyde, and Brad Holiday—sought summary judgment. They argued first that Nevada limited-liability-company law controlled Employees' claim for unpaid wages and that, under Nevada law, LLC managers could not be held personally liable for unpaid wages. Alternatively, they argued that Utah wage law does not impose personal liability on managers for unpaid wages.

¶5 Following a hearing, the district court granted Managers' motion for summary judgment. The court first undertook a conflict-of-laws analysis and concluded that Utah law applies because, under the most significant relationship test, "the majority of [the relevant] contacts were in Utah." Applying Utah law, the district court ruled that Managers were employers as defined by the UPWA, but that the UPWA does not extend wage liability to individual managers. The district court explained that "[t]here is simply no indication in the UPWA that it is intended to impose individual liability on officers or agents of a business." Subsequently, the district court granted summary judgment in favor of Manager David Parker, who served as CEO of Nuriche, reasoning that, like the other managers, Parker could not be held personally liable for unpaid wages.[2]

---

[1] In addition to being a member of the board of managers, David Parker was also a member and officer of Nuriche.

[2] Initially, David Parker did not join the other managers' motion for summary judgment, presumably because he was the manager who extended the employment offer to Employees. The other managers were simply members of the board of managers, which

(continued...)

2

Because there were additional claims pending, Employees sought and obtained rule 54(b) certification of both summary judgment rulings and filed a timely notice of appeal. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶6    Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(c). In this case, the issue before the district court on summary judgment was a matter of statutory interpretation, which presents a legal question. *State v. Bluff*, 2002 UT 66, ¶ 37, 52 P.3d 1210. We therefore review the district court's decision for correctness. *Basic Research, LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 5, 297 P.3d 578.

## ANALYSIS

¶7    On appeal, Employees argue that the district court erred in granting Managers' motions for summary judgment because the UPWA imposes personal liability on LLC managers for unpaid wages. Managers respond that Nevada wage law should apply because Nuriche is a Nevada LLC and that, under Nevada law, LLC managers are not personally liable for unpaid wages. And if Utah law applies, Managers argue that the UPWA should not be read to impose personal liability on them because the statute does not evince an express legislative intent to override long-standing principles of corporate law. We address these arguments in turn.

### I. UTAH WAGE LAW CONTROLS

¶8    In arguing that Nevada law applies, Managers rely on the governing law provision of the Utah Revised Uniform Limited Liability Company Act (URULLCA), which provides that "[t]he law of the jurisdiction of formation of a foreign limited liability company governs . . . the liability of a member as member and a manager as manager for a debt, obligation, or other liability *of the company*." UTAH CODE § 48-3a-901(1) (emphasis added). Managers argue that unpaid wages are like any other debt, obligation, or liability of an LLC. Therefore, because Nuriche was formed in Nevada, the URULLCA requires that we apply Nevada law in determining whether Managers are personally liable for unpaid wages.

---

[2](...continued)
was not in existence at the time Employees were hired.

¶9 While it may be the case that Nevada law governs Managers' liability for the obligations of Nuriche, Employees are not seeking to hold Managers liable for an obligation of Nuriche. Instead, Employees argue that the UPWA imposes direct liability on Managers. Therefore, unlike claims that rely on derivative liability to render individual officers responsible for an obligation of a company, *see, e.g., Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 13, 284 P.3d 630, Employees' claims are premised on a theory of direct liability. Because the URULLCA's governing law provision limits its applicability to those cases implicating officer liability for the obligations of the company, it does not apply here.

¶10 Moreover, the URULLCA provides that "[r]egistration of a foreign limited liability company to do business in this state does not authorize the foreign limited liability company to engage in any activities or affairs or exercise any power that a limited liability company may not engage in or exercise in this state." UTAH CODE § 48-3a-901(3). Because a foreign LLC employing individuals in Utah is required to follow Utah wage law, any claim of illegal wage practices filed by a Utah employee will be governed by Utah wage law. Accordingly, the question of Managers' liability for unpaid wages is governed by Utah law.

## II. THE UPWA DOES NOT IMPOSE CIVIL OR CRIMINAL LIABILITY ON INDIVIDUAL MANAGERS

¶11 Having concluded that Utah law applies, we now turn to the language of the UPWA to determine whether it imposes individual liability on Nuriche's managers for unpaid wages. To ensure that employees who are discharged receive unpaid wages, the UPWA imposes civil and criminal penalties when employers fail to fulfill their wage obligations. The UPWA provides that an "*employer* shall pay [unpaid] wages to [an] employee within 24 hours of the time of separation." UTAH CODE § 34-28-5(1)(a) (emphasis added). And "[a]ny *employer* who shall violate, or fail to comply with any of the provisions of this chapter shall be guilty of a misdemeanor." *Id.* § 34-28-12(1). In short, the UPWA renders employers both civilly and criminally liable for unpaid wages.

¶12 Because the UPWA imposes liability for unpaid wages on employers, we must determine whether Managers qualify as employers. Under the UPWA, the term *employer*

> includes every person, firm, partnership, association,
> corporation, receiver or other officer of a court of this
> state, and any *agent or officer* of any of the above-

mentioned classes, *employing any person in this state*.

*Id.* § 34-28-2(1)(c) (emphasis added). Employees argue that Managers, as agents or officers of Nuriche, are employers under the statute and as such are personally liable for unpaid wages. But Managers argue that they do not qualify as employers under the plain language of the statute. They further argue that Employees' proposed construction of the statute conflicts with other provisions of Utah law that limit the liability of LLC and corporate officers. We agree with Managers.

¶13 "When interpreting statutes, our primary goal is to evince the true intent and purpose of the Legislature." *State v. Watkins*, 2013 UT 28, ¶ 18, 309 P.3d 209 (internal quotation marks omitted). The best available evidence of the Legislature's intent is the statute's plain language. *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863.

¶14 The statutory definition of *employer* includes "every person, firm, partnership, association, corporation, receiver or other officer of a court of this state, and any agent or officer of any of the above-mentioned classes, *employing any person in this state*." UTAH CODE § 34-28-2(1)(c) (emphasis added). While the phrase "agent or officer of any of the above-mentioned classes" encompasses a large group of individuals, that phrase is narrowed by the last clause of the definition. The last clause—"employing any person in this state"—modifies each of the terms in the preceding list. Thus, the statute limits the definition of *employer* to one who employs. We must therefore determine the identity of Employees' employer under the facts of this case.

¶15 In this case, Employees concede they were employed by Nuriche, not by Managers in their individual capacities. Although, Managers may have exercised supervisory power over Employees, any supervisory power arose from their positions as officers and agents of Nuriche—not as direct employers. Because Managers did not personally employ Employees, they are not personally liable for unpaid wages under the statute.

¶16 This conclusion is buttressed by long-accepted principles of Utah corporate law. "The general rule is that a corporation is an entity separate and distinct from its officers, shareholders and directors and that they will not be held personally liable for the corporation's debts and obligations." *Salt Lake City Corp. v. Big Ditch Irr. Co.*, 2011 UT 33, ¶ 27, 258 P.3d 539 (internal quotation marks

omitted).[3] The Legislature has imposed individual liability on business officers and agents in some contexts. But when it has, it has done so expressly. For example, the Insurer Receivership Act explains that any "person acting on behalf of the insurer who" inappropriately gives preference "*is personally liable.*" UTAH CODE § 31A-27a-504(11)(a) (emphasis added). Similarly, the Alcoholic Beverage Control Act provides that "a manager or member of [a] limited liability company in charge of the premises in which [a violation of the Act] is committed *is . . . personally liable.*" *Id.* § 32B-4-302(2)(a) (emphasis added). In each of these contexts, when the Legislature has imposed personal liability on corporate officers and agents, it has done so expressly. We are therefore reluctant to read personal liability into the UPWA, which contains no such express language. Had the Legislature intended to impose personal liability in contravention of long-standing principles of corporate law, it would have done so expressly as it has in other sections of the code.[4]

¶17 Our conclusion is further buttressed by the fact that the UPWA imposes criminal liability on employers. And "a criminal statute must give fair warning of the conduct that it makes a crime." *Bouie v. City of Columbia*, 378 U.S. 347, 350 (1964). For the same reasons that the UPWA is not clear enough to upset generally accepted principles of limited liability for corporate officers and agents, it does not constitute "fair warning" of criminal liability because officers and agents would "be required at peril of life, liberty or property to speculate as to [its] meaning." *Id.* at 351 (internal quotation marks omitted).

¶18 In summary, we hold that Managers are not personally liable under the UPWA because they did not personally employ Employees. Instead, Managers were acting as agents of Nuriche.

### III. ALTERNATE READINGS OF THE UPWA ARE UNSUPPORTED BY THE STATUTORY LANGUAGE

¶19 Employees raise two alternative constructions of the

---

[3] *See also* UTAH CODE § 48-2c-601 (explaining that under the URLLCA, "no organizer, member, manager, or employee of a [limited liability] company is personally liable . . . for a debt, obligation, or liability of the company").

[4] The Supreme Court of the State of Colorado expressed similar concerns when it held that the similarly-worded Colorado Wage Claim Act did not impose personal civil liability. *Leonard v. McMorris*, 63 P.3d 323, 333 (Colo. 2003).

UPWA's definition of *employer* that would render Managers personally liable. While the first has some support in the statutory language, it would dictate an absurd result. While the second alternative construction has an arguable basis in public policy, it finds no support whatsoever in the statutory language.

¶20 Employees first argue that the UPWA imposes liability on all officers and agents of a business entity. Under the statute, the term *employer* includes "every person, firm, partnership, corporation" and "*any* agent or officer of any of the above-mentioned classes." UTAH CODE § 34-28-2(1)(c) (emphasis added). Employees assert that the UPWA renders Managers liable for their unpaid wages simply because Managers are agents and officers of Nuriche.

¶21 Not only does Employees' proposed construction ignore the modifying language limiting an employer to one "employing any person in this state," *Id.* § 34-28-2(1)(c), it would lead to absurd results. Under traditional principal-agent theory, all employees are considered agents of their employer. RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. c (2006). Thus, under Employees' proposed interpretation, the UPWA would impose strict liability for unpaid wages on all employees of a company—be they executive-level employees, administrative assistants, or custodial staff. And all employees would likewise be subject to criminal liability for their employer's failure to pay wages when due. *See* UTAH CODE § 34-28-12(1) ("Any employer who shall violate, or fail to comply with any of the provisions of this chapter shall be guilty of a misdemeanor."). Indeed, this proposed construction would even render Employees themselves criminally liable for Nuriche's failure to pay their own wages. But such an interpretation is contrary to basic notions of agency law under which "a principal is liable for the acts of his agent within the scope of the agent's authority," and not the other way around. *Garland v. Fleischmann*, 831 P.2d 107, 110 (Utah 1992); *see also* RESTATEMENT (SECOND) OF AGENCY § 140 (1958). And such a result is so absurd that it could not possibly have been the intent of our Legislature. *See Tschaggeny v. Millbank Ins. Co.*, 2007 UT 37, ¶ 28, 163 P.3d 615; *Savage v. Utah Youth Vill.*, 2004 UT 102, ¶ 18, 104 P.3d 1242.

¶22 Employees also propose a second, more-modest construction of the UPWA that would limit the types of agents and officers who qualify as employers under the statute to those who exercise some control over the payment of wages. Under this proposed interpretation, only those agents and officers who have

decision-making authority to "separate[] an employee from the employer's payroll," UTAH CODE § 34-28-5(1)(a), could be held personally liable for unpaid wages. This interpretation would absolve any officers or agents without control from personal liability.

¶23   This approach has been endorsed by Pennsylvania courts in interpreting a wage statute that defines *employer* in a similar manner to the UPWA.[5] In *Mohney v. McClure*, the Superior Court of Pennsylvania held that individual officers and agents qualified as employers and thus could be personally liable for unpaid wages. 568 A.2d 682, 683 (Pa. Super. Ct. 1990), *aff'd*, 604 A.2d 1021 (Pa. 1992). But it limited that liability to those officers and agents "who make the decisions as to the manner in which the [company] is managed." *Id.* at 685 (emphasis omitted) (internal quotation marks omitted). The court explained that the legislature had "some purpose for including an agent or officer" in the definition of employer and reasoned that "the only apparent purpose was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments." *Id.* (internal quotation marks omitted). Relying on public policy support in its analysis, the court reasoned that imposing liability on those "involved in the policy-making decisions" would encourage struggling companies to reduce their workforce while they are "still capable of meeting [their] obligations to [their] employees" and would encourage insolvent companies to use their "limited funds. . . . to pay wages." *Id.* (internal quotation marks omitted); *see also Belcufine v. Aloe*, 112 F.3d 633, 639 (3d Cir. 1997). Courts in South Carolina and Washington have also adopted this approach when interpreting similar statutes. *See Dumas v. InfoSafe Corp.*, 463 S.E.2d 641, 645 (S.C. Ct. App. 1995); *Ellerman v. Centerpoint Prepress, Inc.*, 22 P.3d 795, 799–800 (Wash. 2001).

¶24   While the Pennsylvania approach is arguably consistent with public policy, it is not consistent with the language of the UPWA.[6] And the Pennsylvania approach would require courts to

---

[5] 43 PA. STAT. ANN. § 260.2a (defining *employer* as "every person, firm, partnership, association, corporation . . . and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth").

[6] We acknowledge that the Pennsylvania approach addresses the possible criticism that our interpretation introduces some redundancy into the UPWA's definition of *employer*. Indeed, because

(continued...)

engage in a free-standing public policy analysis to determine precisely which agents of an employer should be held liable for unpaid wages. But determining where to draw such a line is generally the role of the Legislature, not this court. *See Jones v. Barlow*, 2007 UT 20, ¶ 34, 154 P.3d 808. This is particularly true where the policy determination at issue "requires placing a premium on one societal interest at the expense of another." *Id.* (internal quotation marks omitted). Because nothing in the statutory language suggests a basis for distinguishing between those agents who are liable for unpaid wages and those agents who are not, we refuse to create such a distinction out of whole cloth. We therefore reject Employees' proposed construction.

¶25   In summary, we find Employees' proposed readings of the UPWA unworkable. The first reading absurdly results in civil and criminal liability for all employees. And the second reading requires policy-based line drawing not supported by the language of the statue.

## CONCLUSION

¶26   We affirm the ruling of the district court. The individual managers of Nuriche cannot be held personally liable for the unpaid

---

[6](...continued)
business entities, by their very nature, can only act through their officers and agents, the inclusion of the phrase "officers and agents" seems to give no additional meaning to the definition of *employer* that would not have existed had the phrase been left out. But we recognize that some redundancy in statutory language is a reality. *See* Richard A. Posner, *Statutory Interpretation — in the Classroom and in the Courtroom*, 50 U. CHI. L. REV. 800, 812 (1983) ("There is no evidence for this improbable proposition [of no redundancy]; what evidence we have, much of it from the statutes themselves, is to the contrary."). And although we generally attempt to interpret statutes to avoid surplus language and to give every word in the statute meaning, we recognize that in some instances, the legislature utilizes statutory redundancies to emphasize a point or to "repeat[] itself out of an abundance of caution." *In re Estate of Nash*, 220 S.W.3d 914, 918 (Tex. 2007) (internal quotation marks omitted); *see also Sabre, Inc. v. Dep't of Transp.*, 429 F.3d 1113, 1122 (D.C. Cir. 2005) ("Legislative drafters often use apparently redundant language in order to emphasize that a broad delegation may not [be] evaded so as to frustrate a statute's purpose.").

wages claimed by Employees under the Utah Payment of Wages Act. This interpretation of the statute is dictated by its language and is consistent both with the pattern set by the Legislature in other statutes and with long-standing notions of limited personal liability under Utah corporate law.

―――――――――