**2020 UT App 24**

## THE UTAH COURT OF APPEALS

LABOR COMMISSION,
Appellant and Cross-appellee,

*v.*

DEREK PRICE,
Appellee and Cross-appellant.

Amended Opinion[1]
No. 20170734-CA
Filed February 13, 2020

Third District Court, Salt Lake Department
The Honorable Su Chon
No. 126918635

Sean D. Reyes and Brent A. Burnett, Attorneys for
Appellant and Cross-appellee

Mark D. Tolman and Jessica P. Wilde, Attorneys for
Appellee and Cross-appellant

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

MORTENSEN, Judge:

¶1     As specifically provided for in Utah Code section 34-28-9(4)(a) (LexisNexis Supp. 2019), the Labor Commission (Commission) filed in the district court an abstract of judgment

---

1. This Amended Opinion replaces the Opinion in Case No. 20170734-CA that was issued on December 12, 2019. Footnote 9 has been revised to address an issue Derek Price raised in a petition for rehearing, and we hereby grant the petition to that limited extent. *See* Utah R. App. P. 35(j). The petition for rehearing is denied in all other respects.

obtained in an administrative proceeding against Derek Price and others.[2] Some years later, when the Commission garnished his wages, Price filed a motion to vacate that judgment. Focusing on due process, specifically service by mail, Price claimed that the judgment was obtained without jurisdiction and was therefore void. He also argued that the judgment was unenforceable against him in light of *Heaps v. Nuriche, LLC*, 2015 UT 26, 345 P.3d 655, a decision from our supreme court that delineated the extent of personal liability of corporate officers and agents for unpaid wages. The district court agreed on both counts. However, rather than vacating the Commission's judgment, the district court quashed the garnishment and ordered Price to pursue a motion to set aside the judgment with the Commission. We reverse.

BACKGROUND

¶2      In May 2010, Marc Cummings filed a wage dispute claim with the Commission against Level 11 Mentoring (Level 11) and Mad Cow Productions (Mad Cow). In the articles of organization for the two companies, Price was listed as the sole member-manager and registered agent of Mad Cow and one of the four member-managers of Level 11. The Commission commenced a wage claim against these employers and several individuals associated with them, and it identified Price as a respondent in the wage claim action filed by Cummings. The other respondents also identified by the Commission included (1) Level 11, (2) Mad Cow, (3) Aaron Christner (a member-manager of Level 11), and (4) Ryan Jensen (the registered agent and a member-manager of Level 11).

---

2. Because there have been no significant changes to the relevant sections of the Utah Code, we cite the most current version unless otherwise noted.

¶3 In September 2010, the Commission issued and mailed notices of the wage claim. The notices advised the respondents that they could either pay the wages or submit a form detailing their disagreement with the allegation. In November 2010, having received no response from any of the respondents, the Commission issued and mailed a preliminary finding stating that respondents owed Cummings $4,721 in unpaid wages. The respondents were advised that if they disagreed with the preliminary finding, they could request a review or informal hearing. On January 27, 2011, the Commission issued and mailed a default order (Default Order) directing the respondents to pay (1) $4,721 in wages to Cummings, (2) a $4,721 fine, and (3) $3,148 in attorney fees, for a total award of $12,590. The Default Order concluded with the following notice:

> Both parties are advised that this [Default Order] is the final agency action, when mailed, unless a written request for agency reconsideration is received within 20 days of the date of this [Default Order]. . . . Additionally, the parties are advised that pursuant to Utah Code § 63G-4-401, they may appeal a final agency decision to the District Court. That appeal must be made within 30 days of the date of the final agency action.

¶4 Copies of these three documents (viz., the wage claim, the preliminary finding, and the Default Order) were sent via first-class mail to Price at the two addresses—one in Orem, Utah, and another in Salt Lake City, Utah—listed for him in the Utah Department of Commerce's records. None of these mailings were returned to the Commission as undeliverable by the U.S. Postal Service. The Commission also mailed the same documents to the other respondents at their recorded addresses.

¶5 Price claimed that he never received the mailings, explaining that he had not lived at the Orem address since the

early 1990s and that he had never lived at and did not recognize the Salt Lake address, which the Commission also identified as the address of Mad Cow. Price also asserted that Christner and Jensen had listed him as the registered agent and a member-manager of Mad Cow without his knowledge or consent. Price further claimed that he had quit working for Mad Cow around September 2010 after his paychecks bounced and he lost confidence in the company's ability to pay him for his work. Price stated that he was living in Sandy, Utah, around the time he quit. He then moved to California for a few years, eventually returning to St. George, Utah, in 2015, and later moving to Midvale, Utah, in 2016.

¶6    In June 2012, the Commission sought to collect on the Default Order by filing an abstract of final award with the district court identifying the amount of unpaid wages, fines, and attorney fees detailed therein. In January 2017, an administrative writ of garnishment was issued and served on Price's employer. After learning of the garnishment from a coworker, Price filed a request for a hearing on the matter in district court. In response, the court, on February 17, 2017, stayed the writ of garnishment for thirty days to allow Price to try to resolve his concerns with the Commission. Price claimed that he "sent certified mail containing several papers" to the Commission explaining that he was never an owner of Mad Cow.[3] Having received no response, Price asserted that he attempted to make contact with the Commission through phone calls, personal visits, and email. On April 4, 2017, Price received an email from the Commission stating,

---

3. Jensen also filed a request for hearing, claiming that Price and Christner were the owners of Mad Cow and that Price owed him money.

> Proper notice of this claim, and its progression, was sent to numerous addresses of all principals of the business, including yourself, Mr. Christner, and Mr. Jensen. This includes the initial notice of claim, subsequent Preliminary Finding, and subsequent Order on Default and Order to Pay.
>
> Numerous opportunities were given to appeal or dispute the claim, and the involvement or lack thereof as to the named Respondents therein. This claim was originally filed in May 2010, with a subsequent order to pay issued on January 27, 2011. The time to dispute this claim has long since passed.

¶7    Price, who up until this point had been acting pro se, retained counsel and filed in the district court a motion to vacate the Commission's judgment. The Commission filed a memorandum in opposition.

¶8    In August 2017, the district court issued a memorandum decision in which it ruled that (1) the res judicata doctrine did not bar Price from pursuing judicial review of the Commission's action; (2) service by first-class mail was insufficient to provide Price notice and afford him due process; and (3) *Heaps v. Nuriche, LLC*, 2015 UT 26, 345 P.3d 655, applied retroactively to shield Price from personal liability for the amounts owed pursuant to the Default Order because he was not an "employer" under the Utah Payment of Wages Act, *see* Utah Code Ann. § 34-28-2(1)(c) (LexisNexis Supp. 2017). However, the district court did not vacate the Commission's Default Order against Price. Instead, it quashed the writ of garnishment and ordered Price to "pursue a motion to set aside in the administrative proceeding with notice to all interested parties." The Commission appeals, and Price cross-appeals the denial of his request for attorney fees.

ISSUES AND STANDARDS OF REVIEW

¶9     The threshold issue before this court is whether the district court had jurisdiction to consider Price's challenge to the Commission's enforcement of the Default Order against him. "Whether the district court has jurisdiction is a question of law that we review for correctness, giving no deference to the lower court." *Potts v. Potts*, 2018 UT App 169, ¶ 7, 436 P.3d 263 (cleaned up).

¶10     The second issue is whether the district court erred in ruling that first-class mail was insufficient to provide Price notice of the wage claim, the preliminary finding, and the Default Order. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 (cleaned up).[4]

---

4. The parties raise two additional issues. First, the Commission argues that res judicata precluded the district court from reviewing the Commission's decision to reach a determination whether *Heaps v. Nuriche, LLC*, 2015 UT 26, 345 P.3d 655, applied retroactively. We agree that the district court should not have addressed the applicability of *Heaps*, not because of res judicata principles, but instead because we conclude that the district court acted without jurisdiction in resolving this question.

Price argued below that the Commission acted without authority in rendering the Default Order against him because *Heaps*, decided years after the claim was determined here, should be retroactively applied to limit the extent of personal liability of corporate officers and agents for unpaid wages. Specifically, he asserts that *Heaps* clarified that the Default Order should not apply to him, relying on Utah Code section 63G-4-501(3)(b) (LexisNexis 2016) which provides, "In a proceeding for

(continued…)

ANALYSIS

I. Jurisdiction of the District Court

¶11    Under the Utah Administrative Procedures Act (UAPA), Utah Code Ann. §§ 63G-4-101 to -601 (LexisNexis 2016), parties typically have thirty days to file a petition for judicial review of a final agency action. *Id.* § 63G-4-401(3)(a). "The timeliness" of Price's petition to review the Commission's Default Order "is a question of jurisdictional significance. To preserve the right to

_____

(…continued)

civil enforcement of an agency's order, in addition to any other defenses allowed by law, a defendant may defend on the ground that . . . the order does not apply to the defendant . . . ." But Price mischaracterizes the statute. Section 63G-4-501(3)(b) confers jurisdiction for the court to hear the defense that a defendant has been misjoined (e.g., someone who was not named in the order or someone who was mistakenly joined because he shared the same name with the responsible party), not for a defendant to claim that he was improperly held responsible for the unpaid wages. Price is not contending that he was mistakenly joined. Rather, he is arguing that even though he is *the Derek Price* named in the Default Order, he should not have been held responsible either because the Commission lacked personal jurisdiction over him or because he should not be held liable for the unpaid wages under *Heaps*. Thus, because Price was not misjoined in this proceeding, we conclude that the district court acted without jurisdiction in addressing the applicability of *Heaps* to Price's case.

Second, Price asserts that the district court erred in not awarding him attorney fees. Because we reverse on the issue of the sufficiency of service by first-class mail, we need not address awarding attorney fees incurred in the district court or on appeal.

challenge an agency decision, an interested party must file a request for review within thirty days. If no such request is filed, the agency action is final and conclusive and may not be subject to collateral attack." *Living Rivers v. U.S. Oil Sands, Inc.*, 2014 UT 25, ¶ 18, 344 P.3d 568; *see also Perez v. South Jordan City*, 2013 UT 1, ¶ 10, 296 P.3d 715 ("[T]he requirement of a timely appeal is jurisdictional."); *Blauer v. Department of Workforce Services*, 2007 UT App 280, ¶ 7, 167 P.3d 1102 ("The timely filing of petitions for review, like that of notices of appeal from judicial orders, is jurisdictional, and failure to timely file results in dismissal." (cleaned up)). Thus, the Commission argues that the district court lacked jurisdiction to hear Price's challenge to the Default Order because he failed to timely file a petition for judicial review.

¶12 The Commission's argument fails because jurisdiction in this case obtains by statutory grant. Price did not seek review of the Default Order; rather, he sought to defend against the garnishment. Thus, the jurisdiction question must be resolved within the framework of the garnishment proceeding, not in the context of judicial review of an agency action. And Price correctly argues that the district court in fact had jurisdiction to hear at least one of his defenses to the Commission's enforcement of the Default Order under a relevant exception provided by the UAPA:

> In a proceeding for civil enforcement of an agency's order, in addition to any other defenses allowed by law, a defendant may defend on the ground that: (a) the order sought to be enforced was issued by an agency without jurisdiction to issue the order [or] (b) the order does not apply to the defendant . . . .

Utah Code Ann. § 63G-4-501(3)(a)–(b) (LexisNexis 2016).

¶13 Price asserts that the writ of garnishment was a "proceeding for civil enforcement" of the Default Order against which he is mounting a defense recognized by section 63G-4-501(3). Therefore, he argues that the district court had jurisdiction to hear his case under the narrow statutory grant of this authority. *See id.* The Commission counters by citing our decision in *Utah State Tax Commission v. Echols*, 2006 UT App 19U (per curiam), in which we stated that a district court lacks "subject matter jurisdiction to consider a collateral attack on an underlying judgment in the context of the garnishment proceedings." *Id.* para. 4. But our decision in *Echols* addressed the lack of jurisdiction to attack an underlying judgment during a garnishment proceeding in broad terms. It did not address the statutory grant of jurisdiction.[5] So, while the general rule (viz., that a garnishment proceeding cannot be used to mount a collateral attack of an underlying judgment) expressed in *Echols* remains valid,[6] the district court in Price's case possessed

---

5. In addition to the defense that an agency acted without jurisdiction and that an order does not apply to a defendant, the statute also allows a defendant to assert the following defenses in a proceeding for civil enforcement of an agency order: (1) "the defendant has not violated the order" or (2) "the defendant violated the order but has subsequently complied." Utah Code Ann. § 63G-4-501(3)(c)–(d) (LexisNexis 2016).

6. Caselaw from other jurisdictions supports this general rule. *See Koors v. Great Sw. Fire Ins. Co.*, 538 N.E.2d 259, 260 (Ind. Ct. App. 1989) ("[I]t is well established that [an order of garnishment in] proceedings supplemental cannot be used to collaterally attack the underlying judgment."); *Estate of Droomers ex rel. Droomers v. Parnell*, Nos. 333691, 333692, 334822, 2017 WL 4654416, at *8 (Mich. Ct. App. Oct. 17, 2017) (per curiam) ("[I]n a

(continued…)

jurisdiction to consider a narrow category of challenges under a specific statutory grant of authority.

¶14    Thus, we conclude that the defense Price raised in the context of the garnishment proceeding conferred jurisdiction on the district court to determine whether the Commission acted without jurisdiction in rendering the Default Order.

## II. Sufficiency of Notice by First-class Mail

¶15    Price asserts that serving the notice of the wage claim by first-class mail deprived him of due process, resulting in the Commission acting without jurisdiction to render the Default Order against Price. While it is true that proper service is required to exercise jurisdiction over a party, *see Cooper v. Dressel*, 2016 UT App 246, ¶ 3, 391 P.3d 338 (stating that "a judgment entered against party that was never properly served is void" for lack of personal jurisdiction), the question here is whether service via first-class mail in an administrative wage claim proceeding satisfies due process under the particular facts of this case.

¶16    The UAPA requires an agency to "mail the notice of agency action to each party" when "adjudicative proceedings are commenced by the agency." Utah Code Ann. § 63G-4-201(2)(b)(i) (LexisNexis 2016). The statute is silent regarding what type of mail must be used, but the Commission has defined mail to mean "first class mailing sent to the parties of a wage claim or claim of retaliation, to the last known address on the Commission's record." Utah Admin. Code R610-3-2(I). Here, the Commission used first-class mail to notify Price of the wage

---

(…continued)
garnishment proceeding, a party may not attack the underlying judgment . . . .").

claim, the preliminary finding, and the Default Order. *See id.* R610-3-4(F). In response to Price's motion to vacate the judgment against him, the district court made the following determination regarding service:

> Service by first class mail may be adequate most of the time, but this situation is a reminder that the Department of Commerce's business directory is open to fraud when people can register a business in the name of another without their knowledge or consent. . . . The burden on the Commission to alter its service requirement to certified mail would be minimal for its outgoing mail.

While the effect of this analysis is not altogether clear, Price and the Commission seem to agree that the district court decided that the Commission was required to use certified mail to serve notice and so satisfy the requirements of due process. Thus, it appears that the district court determined certified mail should be required to prevent fraud, even though the court acknowledged that there was no evidence fraud had ever actually occurred in a wage claim proceeding. The court also concluded that certified mail was more likely to apprise someone in Price's position of a wage claim. Ultimately, we disagree with the district court and determine that service by first-class mail satisfied the requirements of due process.

¶17 Price asserts that two Utah cases support his position that the Commission was required to notify him using certified mail. In *Anderson v. Public Service Commission*, 839 P.2d 822 (Utah 1992), the Motor Carrier Act required that service of process be made by certified mail. *Id.* at 825. The Public Service Commission (PSC) complied and sent notice of a proposed order to Anderson via certified mail. *Id.* When the proposed order was returned, Anderson argued that the PSC had a duty to take additional steps to ensure that he received notice. *Id.* Our

supreme court disagreed and held that the Motor Carrier Act "makes no reference to any sort of personal service or actual notice requirement. The most burdensome form of service articulated is certified mail. Thus, we can infer that, at most, the legislature intended that the [PSC] be obligated to serve its orders by certified mail, not by personal service." *Id*. In *John Kuhni & Sons Inc. v. Labor Commission*, 2018 UT App 6, 414 P.3d 952, the labor commission successfully sent notice to Kuhni via FedEx. *Id.* ¶ 3. But the governing statute required that notice be made by "certified mail." *Id.* ¶ 10. We determined that "the term 'certified mail,' as used in the relevant statute, encompasses only items sent via certified mail through the United States Postal Service," and we held "that the State did not properly serve Kuhni when it sent the Citation to Kuhni via FedEx." *Id.* ¶ 21.

¶18 Price argues that *Anderson* and *Kuhni* support his "position that service by certified mail would have been a more reliable way to notify him than first class mail." But neither case stands for the proposition Price asserts, namely that the Commission must use certified mail to satisfy the demands of due process. *Anderson* and *Kuhni* dealt with the issue of whether an agency must follow statutory directives with regard to providing service, not whether the statutory requirements themselves met the demands of due process. In both of those cases, service by certified mail was required—nothing more, nothing less—and no substitute would suffice. Thus, Price's argument misses the mark. These cases are not about the superiority of certified mail; rather, they merely stand for the proposition that agencies are required to use the statutorily authorized method of providing service.[7] In no way do they

---

7. In *Anderson v. Public Service Commission*, 839 P.2d 822 (Utah 1992), our supreme court determined that certified mail met the demands of due process, but the court did not opine on whether

(continued…)

categorically mandate that state agencies must use certified mail to provide notice of proceedings. The most that can be inferred from these cases is that certified mail meets the demands of due process in certain circumstances, not that first-class mail fails to do so.

¶19   Price also argues that due process required the Commission to have been more diligent in its efforts to find him, implying that the Commission had a responsibility to ensure that Price "received the mail." "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections*." Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). And as our supreme court has noted, "sufficiency of 'notice' for due process purposes is more limited in administrative matters than in other areas of the law." *Anderson*, 839 P.2d at 825 (quoting *Worrall v. Ogden City Fire Dep't*, 616 P.2d 598, 602 (Utah 1980) (Hall, J., dissenting)). Thus, "notice must be reasonably calculated under all the circumstances to give interested parties an opportunity to protect their interests. Under this standard, the proper inquiry

---

(…continued)

first-class mail fell below that standard: "To comport with due process, notice must be reasonably calculated under all the circumstances to give interested parties an opportunity to protect their interests. . . . Although certified mail will not ensure actual notice in all cases, it is a method reasonably calculated to inform certificate holders of Commission orders." *Id.* at 825–26 (cleaned up). The *Anderson* court did not opine about whether first-class mail would meet the same standard but examined only the standard of certified mail that the legislature had expressly designated.

focuses on whether the agency acted reasonably in selecting means likely to inform persons affected, not whether each affected person actually received notice." *Id.* (cleaned up); s*ee also State v. King*, 111 P.3d 1146, 1147 (Or. Ct. App. 2005) ("In general, due process under the Fourteenth Amendment is a flexible concept that calls for such procedural protections as the particular situation demands." (cleaned up)); *Withrow v. Schou*, 13 S.W.3d 37, 40 (Tex. App. 1999) ("As to Constitutional concerns, actual notice is not and has never been the standard for determining whether due process has been afforded a litigant. Rather, due process only requires notice, reasonably calculated under the circumstances, to be given.").

¶20 Here, in the context of a garnishment proceeding flowing from an administrative proceeding, we must examine these circumstances under the factual underpinnings of the administrative adjudication. In this case, the Commission was working under the premise that Price was a manager of Mad Cow, which registered Price's address as a manager, placing upon Price a concomitant duty to keep the Department of Commerce apprised of his address, *see* Utah Code Ann. § 16-17-206 (LexisNexis 2013); *id.* § 48-3a-111(2) (2015). If these facts are actually based upon fraud, then that is a claim that should be brought before the Commission. However, assuming that Price was a registered manager of Mad Cow with an ongoing duty to keep his address current with the Department of Commerce, we conclude that the Commission's use of service by first-class mail was reasonably calculated to provide notice to Price of the wage claim proceedings and thus comported with the demands of due process under the limited requirements of administrative proceedings.

¶21 First, it was reasonable for the Commission to follow the statutory requirements for providing notice of the commencement of adjudicative proceedings. The relevant statute required only that upon the commencement of agency

proceedings, the agency "mail the notice of agency action to each party," *id.* § 63G-4-201(2)(b)(i) (2016), and rule R610-3-2(I) of the Utah Administrative Code required that notice of a wage claim be sent by "first class mailing . . . to the last known address on the Commission's record." Consistent with these requirements, the Commission sent notice of the wage claim by first-class mail to Price at the addresses it had on file for him. *See Anderson*, 839 P.2d at 825 (stating that the most burdensome form of service required is that articulated by the legislature); *Kuhni*, 2018 UT App 6, ¶ 20 (stating that agencies are required to comply with statutorily mandated methods of service); *Saysavanh v. Saysavanh*, 2006 UT App 385, ¶ 25, 145 P.3d 1166 (requiring service to be "in conformance with the mode prescribed by statute" for a court to have jurisdiction (cleaned up)); *see also State v. Lewis*, 953 P.2d 1016, 1019, 1027 (Kan. 1998) (stating that statutory notice provisions requiring notice be sent by first-class mail "comport with notice requirements of the Due Process Clause of the United States Constitution"); *Banks v. Unemployment Comp. Board of Review*, 370 A.2d 1234, 1237 (Pa. Commw. Ct. 1977) ("Taking into consideration the type of hearing and rights adjudicated, [notification by means of regular mail] is a reasonable means of providing for service of notice. When the State Legislature prescribes a reasonable method of service, it is due process as to persons resident herein and as to parties to lawsuits in our State courts.").

¶22 Second, the Commission acted reasonably in sending notices to the addresses it had on file for Price because attempting to contact him at these addresses provided the most likely means to inform Price of the matter under the circumstances of this case. *See Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 162, 299 P.3d 990 (Lee, J., dissenting) ("[F]irst-class mail notice (or its equivalent) [is required] before a judgment can extinguish a claim belonging to known claimants. Mere publication is categorically insufficient

as a primary form of notice for known claimants under the Due Process Clause. It withstands constitutional scrutiny only as a supplement to individual notice or for claimants whose identity or location is unknown."); *see also Prince v. Marion County Auditor*, 992 N.E.2d 214, 221 (Ind. Ct. App. 2013) (concluding that notice sent by first-class mail of a tax sale process "met the requirements of due process"); *In re License of West Side Pawn*, 587 N.W.2d 521, 523 (Minn. Ct. App. 1998) (concluding that notice sent by first-class mail revoking a business license "satisfied due process"); *Wells Fargo Bank, NA v. Ferreri*, 199 A.3d 892, 897 (Pa. Super. Ct. 2018) (concluding that service by first-class mail was "reasonably calculated to inform [an] appellant of the pending [sheriff's] sale and contained the information necessary to provide an opportunity to present objections" (cleaned up)).[8]

¶23    Third, while certified mail may have made actual notice more likely, it may have also had the opposite effect. As the Supreme Court noted, certified mail provides superior service only

---

8. Price asserts that he was listed as the registered agent and the member-manager of Mad Cow without his knowledge or consent, thus implying that his name was fraudulently added to the Department of Commerce's record. Apart from his assertion that his name was fraudulently listed, Price has provided no evidence of such fraud, and the district court also noted that "[n]either party has presented evidence of whether this sort of [fraudulent] situation has occurred in the past and how often." As we note, *supra* note 3, another respondent claimed that it was Price who was the wrongdoer. This is the kind of factually open question that should be addressed to the Commission in the first place. *See A-Fab Eng'g v. Tax Comm'n*, 2019 UT App 87, ¶ 20, 444 P.3d 547.

> when someone is home to sign for the letter, or to inform the mail carrier that he has arrived at the wrong address. Otherwise, certified mail is dispatched and handled in transit as ordinary mail, and *the use of certified mail might make actual notice less likely in some cases*—the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time.

*Jones v. Flowers*, 547 U.S. 220, 234–35 (2006) (emphasis added) (cleaned up). Following this reasoning, first-class mail may have provided a more certain means of giving notice to Price because the letters that the Commission sent remained at Price's last known addresses for a longer period of time, thus increasing the probability that he would receive them. Certified mail would not have provided this prolonged opportunity for discovery.

¶24    Fourth, the fact that the notices were never returned to the Commission as undeliverable indicates that they were received and remained at the addresses available to the Commission and associated with Price. In other words, the Commission acted on a reasonable assumption that Price had received the notices because they were not returned as undeliverable. *See Griffin v. Bierman*, 941 A.2d 475, 487 n.14 (Md. 2008) ("If first-class mail is undeliverable, it is returned to the sender. At which point, the sender knows that notice was not received."); *id.* at 484 n.11 (noting that if first-class-mail notices are returned undelivered or certified mail is returned as unclaimed, then "reasonable follow-up measures . . . might be required" to give notice to the interested party); *see also In re Foreclosures of Liens for Delinquent Land Taxes by Action in rem Collector of Revenue*, 334 S.W.3d 444, 457 (Mo. 2011) (en banc) (stating that to meet the due process standard articulated in *Flowers*, "in the absence of a postal service record, the city should maintain records detailing when notices are 'returned to sender'").

¶25 Thus, providing notice by first-class mail did not deprive Price of due process; accordingly, the Commission had jurisdiction to render the Default Order.

CONCLUSION

¶26 The district court had jurisdiction—in the context of a garnishment proceeding under section 63G-4-501(3)(a) of the Utah Code—to consider Price's defense that the Commission acted without jurisdiction. However, the district court erred in determining that service by first-class mail violated Price's right to due process.[9]

¶27 Reversed.

———————

9. Price may not be without remedy. As a defaulted party, he can "seek to have the agency set aside the default order . . . by following the procedures outlined in the Utah Rules of Civil Procedure." Utah Code Ann. § 63G-4-209(3)(a) (LexisNexis 2016). He would do so by filing a motion "to set aside [the] default and any subsequent order" with the presiding officer at the Commission. *Id.* § 63G-4-209(3)(b). The presiding officer's decision on the motion to set aside the default would be subject to agency review and, if necessary, district court and appellate court review. *Id.* § 63G-4-209(3)(c). At oral argument, Price indicated that just such a proceeding is pending at the Commission, but he represented it had been stayed awaiting the disposition of this appeal.