*This opinion is subject to revision before publication in the Pacific Reporter*

**2015 UT 17**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MICAH RIGGS and AMANDA RIGGS,
*Appellees,*

*v.*

GEORGIA-PACIFIC LLC and UNION CARBIDE CORPORATION,
*Appellants.*

No. 20130459
Filed January 30, 2015

Third District, Salt Lake
The Honorable Glenn K. Iwasaki
No. 120903586

Attorneys:

Gilbert L. Purcell, Alan R. Brayton, Brian Holmberg, A. Jase Allen,
Salt Lake City, for appellees

Karra J. Porter, Sarah E. Spencer, Katherine E. Venti,
Salt Lake City, for appellant Georgia-Pacific, LLC

Patricia W. Christensen, Salt Lake City,
Mary Price Birk, Ronald L. Hellbusch, Denver, CO,
for appellant Union Carbide Corporation

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of
the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 In this case we are asked to determine whether a judgment rendered in favor of the plaintiff in a personal injury suit bars a subsequent wrongful death claim arising out of the same injury and against the same defendants. This question is a matter of first impression in Utah. Though in some of our prior cases we have hinted at Utah's stance on this question, we have

never explicitly addressed it.[1] In this case we are asked to examine Utah's wrongful death cause of action, which is found both in the Utah Code, at section 78B-3-106, and the Utah Constitution, in article XVI, section 5. We hold that a prior personal injury suit does not bar a related wrongful death claim brought by the decedent's heirs or personal representative.

## BACKGROUND

¶ 2 Plaintiff Micah Riggs is the personal representative of the estate of decedent Vickie Warren, his mother-in-law. Mr. Riggs brought a wrongful death suit on behalf of Ms. Warren's children, Amanda Riggs and Benjamin Warren (Heirs).

¶ 3 In 2007, Ms. Warren developed peritoneal mesothelioma, a rare type of cancer linked to asbestos exposure. Later that year, Ms. Warren filed a personal injury lawsuit against Georgia-Pacific LLC, Union Carbide Corporation (Defendants), and other defendants not relevant here, seeking damages due to her exposure to asbestos, which she claimed caused her mesothelioma. She asserted claims for negligence, strict product liability, and failure to warn. Ms. Warren's complaint alleged that she came into contact with asbestos-containing products manufactured by the Defendants in various locations, including the school where she worked, the apartment units her brothers built on the family's property, and the house where she lived with her father.

¶ 4 The personal injury lawsuit went to trial, and on May 12, 2010, a jury found that Ms. Warren was entitled to $5,256,818.61 in damages. The jury allocated 5 percent of the fault to Georgia-Pacific and 20 percent to Union Carbide; the remaining fault was distributed among other parties. Ms. Warren died on May 25, 2010, thirteen days after receiving the verdict in her personal injury lawsuit. The court of appeals later affirmed the judgment.[2]

---

[1] *Bybee v. Abdulla*, 2008 UT 35, ¶ 23, 189 P.3d 40; *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 332 (Utah 1997).

[2] *Riggs v. Asbestos Corp.*, 2013 UT App 86, 304 P.3d 61.

¶ 5   On May 23, 2012, Mr. Riggs, on behalf of the Heirs, filed a wrongful death and survival[3] suit against Georgia-Pacific, Union Carbide Corporation, and others, including some defendants who were named in Ms. Warren's personal injury suit and some who were not.   The Heirs' wrongful death complaint stated causes of action for negligence, strict liability, and failure to warn.   The Heirs sought compensatory and punitive damages for the loss of Ms. Warren and asserted her death was caused by Defendants' asbestos or asbestos-containing products.   The court ruled that the claims against the new defendants were barred by the statute of limitations and dismissed them.   The Heirs conceded that they are barred from re-litigating issues that were decided in Ms. Warren's personal injury case.   They argue that the issue in their wrongful death suit is simply whether exposure to Defendants' asbestos products caused Ms. Warren's death and if so, what damages are owed to the Heirs.

¶ 6   Defendants moved to dismiss the wrongful death claim under rule 12(b)(6) of the Utah Rules of Civil Procedure on the grounds that Ms. Warren's personal injury trial and judgment precluded the wrongful death action.   The Third District Court denied the motion and held that the Heirs had an independent cause of action for wrongful death.   This court granted Defendants' motion for permission for an interlocutory appeal.   We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶ 7   Whether a plaintiff has stated a claim upon which relief can be granted is a question of law, which we review for correctness.[4]   Similarly, whether the district court correctly interpreted Utah Code section 78B-3-106(1) is a matter of law that

---

[3] The Heirs later dismissed the survival claim, which allows personal representatives or heirs of an injured party to continue a personal injury claim if the injured party dies before judgment or settlement of the claim.   UTAH CODE § 78B-3-107(1)(b).   They concede that the "trial and adjudication of the personal injury action against these defendants bars the pursuit of a survival action against them."

[4] *Berneau v. Martino*, 2009 UT 89, ¶ 9, 223 P.3d 1128.

we review for correctness,[5] as is the interpretation of article XVI, section 5 of the Utah Constitution (Wrongful Death Clause).[6]

## ANALYSIS

¶ 8  Utah Code section 78B-3-106 provides that, except as provided in the Workers' Compensation Act, "when the death of a person is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death."  The question in this case is whether this cause of action is foreclosed when the decedent prevailed during her lifetime in a personal injury lawsuit stemming from the same injury.  Based on the language of Utah Code section 78B-3-106 as well as article XVI, section 5 of the Utah Constitution, we conclude that a decedent's heirs may bring an action for wrongful death even when the decedent prevailed in a related personal injury suit during his or her lifetime.

¶ 9  Defendants argue on appeal that this court should adopt a rule barring heirs from bringing a wrongful death suit when the decedent herself already sued on the underlying personal injury action.  The Heirs counter that under the plain language of Utah Code section 78B-3-106, a wrongful death action is an independent cause of action that accrues "for the benefit" of the heirs.  The Heirs also respond that to adopt Defendants' proposed rule would violate article XVI, section 5 of the Utah Constitution, which states that "[t]he right of action to recover damages for injuries resulting in death, shall never be abrogated . . . except in cases where compensation for injuries resulting in death is provided for by law."  Defendants argue that the constitutional provision does not apply because the only rights protected by article XVI, section 5 were those that existed at the time it was adopted,[7] which they assert did not include the right to bring a

---

[5] *Kelson v. Salt Lake Cnty.*, 784 P.2d 1152, 1154 (Utah 1989).

[6] *Council of Holladay City v. Larkin*, 2004 UT 24, ¶ 6, 89 P.3d 164 (stating that issues of constitutional interpretation are reviewed for correctness).

[7] *See Tiede v. State,* 915 P.2d 500, 504 (Utah 1996) (explaining that "the scope of protection afforded by the wrongful death provision [of the Utah Constitution] is limited to rights of action

(con't.)

wrongful death claim when the decedent had litigated the claim during her lifetime.

¶ 10 Today we are asked, simply, to analyze the language of Utah Code section 78B-3-106 and determine whether it forecloses the wrongful death cause of action when the decedent sued during her lifetime and prevailed. To answer this question, we turn to the plain language of the statute.[8] If the plain language of a statute is unambiguous, "no other interpretive tools are needed."[9] When evaluating a statute, we presume that the legislature used each term "advisedly."[10] Additionally, we "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful."[11]

¶ 11 Defendants claim that section 78B-3-106 "does not address the issue . . . one way or the other." We disagree. Utah Code section 78B-3-106 states that when a person is wrongfully or negligently killed, "his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death." This language unambiguously, and without caveat, grants a person's heirs the right to "maintain an action for damages" if they allege that the decedent's death was caused by "the wrongful act or neglect of another."[12] When faced with such "clear and unequivocal"[13] language, there is no further need for analysis. We find nothing in the statute to suggest that the cause of action is tied to the decedent's underlying personal injury claim. Moreover, in so holding, we find it unnecessary to analyze the Wrongful Death Clause of the Utah Constitution.

---

that existed at the time the provision was adopted").

[8] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863.

[9] *Id.* ¶ 15 (internal quotation marks omitted).

[10] *Sindt v. Ret. Bd.*, 2007 UT 16, ¶ 8, 157 P.3d 797 (internal quotation marks omitted).

[11] *Marion Energy, Inc.*, 2011 UT 50, ¶ 14.

[12] UTAH CODE § 78B-3-106.

[13] *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989).

¶ 12   Though our plain language analysis ends there, we write further to note that it is true, as Defendants point out, that courts in a majority of states reason that a wrongful death action is barred if the decedent already won a personal injury or other similar action based on the same injuries.[14]   But these decisions are based on the plain language of wrongful death statutes that differ significantly from Utah's.   Though it is not strictly relevant to our plain language analysis, it is interesting to note that most, if not all, of the states following the majority view have wrongful death statutes with some variation of the phrase "if death had not ensued," indicating that the wrongful action in those states was intended simply to provide relief for persons who were injured and died without obtaining any recovery from the perpetrator of their injuries.[15]   And the history of the wrongful death cause of

---

[14] *See Thompson v. Wing*, 637 N.E.2d 917, 920–21 (Ohio 1994) (explaining that the "rationale" of the majority of jurisdictions "is that a wrongful death action is a derivative action[,] . . . . a view based on the 'if death had not ensued' phrase in the wrongful death statute[s]" of those states).

[15] *Compare* UTAH CODE § 78B-3-106(1) "[W]hen the death of a person is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death . . . ."), *with*, *e.g.*, 740 ILL. COMP. STAT. ANN. 180/1 (West 2014) (providing that a wrongful death cause of action exists "[w]henever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, *if death had not ensued,* have entitled the party injured to maintain an action and recover damages in respect thereof" (emphasis added)), IND. CODE ANN. § 34-23-1-1 (West 2014) ("When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, *if the former might have maintained an action had he or she, as the case may be, lived,* against the latter for an injury for the same act or omission." (emphasis added)), MICH. COMP. LAWS ANN. § 600.2922(1) (West 2014) ("Whenever the death of a person . . . shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, *if death had not ensued*, have entitled the party injured to maintain an action . . . the person . . . shall be

(con't.)

action in the United States further elucidates the both common-law and statutory divide between the states concerning the law of wrongful death.[16] The accidental killing of another person was

---

liable to an action for damages, notwithstanding the death of the person injured . . . ." (emphasis added)), *and* VA. CODE ANN. § 8.01-50 (West 2014) ("Whenever the death of a person shall be caused by the wrongful act, neglect, or default of any person . . . and the act, neglect, or default is such as would, *if death had not ensued*, have entitled the party injured to maintain an action . . . and to recover damages in respect thereof, then . . . the person who . . . would have been liable, *if death had not ensued*, shall be liable . . . notwithstanding the death of the person injured." (emphases added)). *See also Variety Children's Hosp. v. Perkins*, 445 So. 2d 1010, 1011–12 (Fla. 1983) (Florida's wrongful death statute states that "[w]hen the death of a person is caused by the wrongful act . . . of any person . . . and the event would have entitled the person injured to maintain an action and recover damages *if death had not ensued*, . . . the person . . . shall be liable for damages . . . notwithstanding the death of the person injured" (emphasis added)); *Haws v. Luethje*, 503 P.2d 871, 873 (Okla. 1972) (Oklahoma's wrongful death statute states that "[w]hen the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter . . . If the former *might have maintained an action had he lived* against the latter, or his representative, for an injury for the same act or omission." (emphasis added)).

[16] *See Bybee v. Abdullah*, 2008 UT 35, ¶ 18, 189 P.3d 40 (explaining that "[t]he wrongful death cause of action entered Utah territorial law in 1874 and was incorporated into the Utah Constitution when Utah entered the Union. . . . In 1895, however, when the drafters of the Utah Constitution were at work, the status of the wrongful death cause of action among the forty-four states remained equivocal. . . . [W]e have attributed the incorporation of the wrongful death cause of action into our constitution to the perceived importance of the right and to a desire to remove any uncertainty in our state about its viability." (citations omitted)); *Jones v. Carvell*, 641 P.2d 105, 107 (Utah 1982) ("[The wrongful death cause of action] was of such importance at the time of statehood given the general uncertainty of the law, at least in other states, that the framers of the Utah Constitution

(con't.)

considered "compensable" under English law for hundreds of years—even prior to the Norman Conquest of the eleventh century,[17] a historical event that deeply affected the development of the modern Anglo-American legal system.[18] Yet in 1808, an English court upended that rule and held that death "could not be complained of as an injury."[19] In response, in 1846, England enacted Lord Campbell's Act to provide relatives of a deceased person the right to recover damages for that person's wrongful death.[20] The American states followed suit and enacted their own statutes "patterned after Lord Campbell's Act"[21] to varying degrees. The Utah Territorial Legislature established a wrongful death cause of action in 1874, nearly thirty years after Lord Campbell's Act was first enacted in England.[22] Near the time

provided for a judicial remedy by Article XVI, § 5 of the Constitution . . . ."); *see also Thompson*, 637 N.E.2d at 920–22 ("Near the time [of the late 1860s], courts in this country began to address the issue whether a wrongful death action could be maintained when the injured person had settled or recovered a judgment in an action before the person's death, reaching opposite conclusions on the issue. Some courts followed the conservative approach . . . and refused to allow two suits on the same tortious conduct. Other courts were more expansive in their view, recognizing that the enactment of a wrongful death statute created a new cause of action, one that could not be foreclosed by the injured person during his or her lifetime."); Vitauts M. Gulbis, Annotation, *Judgment in Favor of, or Adverse to, Person Injured as Barring Action For His Death*, 26 A.L.R. 4TH 1264, § 2[a] (1983).

[17] *Jones*, 641 P.2d at 107.

[18] *See generally* James W. Mehaffy, *Powdered Wigs, Persiflage, & Pro Bono*, 65 TEX, B. J. 329, 330 (2002).

[19] *Jones*, 641 P.2d at 107 (internal quotation marks omitted).

[20] *Id.; see also Webb v. Denver & R. G. W. Ry. Co.*, 24 P. 616, 616-17 (Utah Terr. 1890).

[21] *Id.*

[22] *Id.* When first enacted in the Utah Territory, the wrongful death cause of action was strikingly similar to Lord Campbell's Act, but it was soon changed to resemble its current form. *See* 1884 Utah Laws 143; *Webb*, 24 P. at 616.

when the Utah Territorial Legislature incorporated the wrongful death cause of action into its laws, courts around the country had been "reaching opposite conclusions" on the issue of "whether a wrongful death action could be maintained when the injured person had settled or recovered a judgment in an action before the person's death."[23] We believe the language of Utah's wrongful death statute and constitutional provision must be evaluated, in historical context, as a reaction to the "unsettled status" of wrongful death around the country.[24] Utah Code section 78B-3-106 differs significantly from Lord Campbell's Act—and those state statutes most closely derived from Lord Campbell's Act—in that it omits the specification that the wrongful death claim may only be brought against "the person who would have been liable, if death had not ensued."[25] Accordingly, we are not convinced by the reasoning of courts that have held wrongful death to be a derivative action, where that conclusion stems from such different statutory language. In sum, both the history of the wrongful death cause of action and the plain language of our statute support our conclusion that in Utah, a wrongful death action is independent and is not foreclosed as a matter of law simply because the decedent prevailed in a related personal injury action.

¶ 13 Our previous cases are not to the contrary. In *Jensen v. IHC Hospitals, Inc.*, we were faced with a statutory conflict between the general statute of limitations for wrongful death claims and the statute of limitations found in Utah's Health Care Malpractice Act.[26] There we applied the more specific statute— the Health Care Malpractice Act—and concluded that the heirs of a decedent who allegedly died as a result of medical malpractice would be held to the Health Care Malpractice Act's statute of limitations rather than the general statute of limitations for

---

[23] *Thompson*, 637 N.E.2d at 920–22.

[24] *Bybee*, 2008 UT 35, ¶ 18.

[25] *Stewart v. United Elec. Light & Power Co.*, 65 A. 49, 50-52 (Md. 1906) (quoting Maryland's wrongful death statute and explaining that the statute, enacted in 1852, was "almost a literal transcript of Lord Campbell's [A]ct"); *supra* ¶ 12 n.15.

[26] 944 P.2d 327, 331 (Utah 1997); UTAH CODE §§ 78B-3-401 to -425.

wrongful death.[27]  In reaching this result, the *Jensen* court noted that a "majority of states refuses to allow a decedent's heirs to proceed with a wrongful death suit after the decedent has settled his or her personal injury case or won or lost a judgment before dying."[28]  But as we explained later in *Bybee v. Abdullah*, this discussion was used as a "rhetorical fillip to bolster our holding" and to "lend authoritative support" to the court's reasons for applying the Health Care Malpractice Act's statute of limitations to foreclose the wrongful death action in that case.[29]  Moreover, as we explained in *Bybee,* despite the dicta in *Jensen*, this court had never "expressly" answered the question of whether "the settlement or entry of judgment in a personal injury action bars a wrongful death claim"[30] — until today.

¶ 14  In *Bybee*, much like in *Jensen*,[31] we were called to address a possible conflict between the Utah Health Care Malpractice Act and the general provisions governing wrongful death.[32]  The defendant in *Bybee* asserted that the decedent's arbitration agreement was binding on his heirs and foreclosed their wrongful death action in the district court.[33]  But the Utah Health Care Malpractice Act bound a nonsignatory to an arbitration agreement "if the sole basis for the claim is an injury sustained by [the patient]."[34]  Faced with a conflict between the Health Care

---

[27] *Jensen*, 944 P.2d at 331–32, 337.  *Compare* UTAH CODE § 78B-3-404(1) ("A malpractice action against a health care provider shall be commenced within two years after the plaintiff or patient discovers, or . . . should have discovered the injury . . . but not to exceed four years after the date of the alleged act . . . ."), *with* UTAH CODE § 78B-2-304(2) (an action "for recovery of damages for a death caused by the wrongful act or neglect of another" "may be brought within two years").

[28] 944 P.2d at 332.

[29] 2008 UT 35, ¶¶ 12, 15.

[30] *Id.* ¶ 14 n.3.

[31] 944 P.2d at 331–32.

[32] *Bybee*, 2008 UT 35, ¶ 21.

[33] *Id.*

[34] *Id.* ¶ 30 (alteration in original) (internal quotation marks

(con't.)

Malpractice Act on one hand, and Utah Code section 78B-3-106 and the Utah Constitution on the other, we briefly recounted the history of article XVI, section 5 and the wrongful death cause of action.[35] We noted that Utah chose to make wrongful death an independent action accruing in the heirs of the decedent—a choice reflected in its inclusion in the constitution as well as the language of the wrongful death statute.[36] For that reason, we concluded that wrongful death is subject only to certain defenses that the tortfeasor could have asserted against the decedent.[37] In so holding, we emphasized that the protection for wrongful death contained in article XVI, section 5 of the Utah Constitution places it in a "position of privilege among torts" and entitles it to "special protection against attempts to pare back its scope."[38] Ultimately we concluded that, despite language to the contrary in the Health Care Malpractice Act, an arbitration agreement signed by a decedent was not binding on his heirs and did not foreclose their right to bring a wrongful death action.[39]

¶ 15 In any event, in both *Jensen* and *Bybee*, we were presented with statutory conflicts—in *Jensen*, between the statute of limitations for general wrongful death and the statute of limitations for medical malpractice;[40] and in *Bybee,* between the

---

omitted).

[35] *Id.* ¶¶ 18–19.

[36] *Id.* ¶ 23.

[37] *Id.* ¶¶ 18–19, 24.

[38] *Id.* ¶¶ 18-19, 23 ("A wrongful death plaintiff is not exposed to all of the defendant's defenses . . . . To be skeptical of joining with the courts of sister states that have adopted wrongful death causes of action marked by excessive vulnerability to defenses created by the decedent is to honor the drafters of the Utah Constitution, whose restiveness about the questionable commitment shown by other states to a robust wrongful death cause of action motivated them to place article XVI, section 5 in our state's charter.").

[39] *Id.* ¶ 25.

[40] 944 P.2d at 331–32 ("Clearly, the legislature intended that the Utah Health Care Malpractice Act apply to actions for wrongful

(con't.)

Health Care Malpractice Act's arbitration provision and article XVI, section 5 of the Utah Constitution.[41] Our analysis in those cases was therefore driven by the need to choose between conflicting laws. In the case before us, Defendants have not given us reason to doubt the plain language of Utah Code section 78B-3-106(1), nor is there any statutory conflict. We therefore decline to resort to alternative interpretive tools, and hold that under the plain language of Utah Code section 78B-3-106(1), the wrongful death cause of action is not barred by a decedent's prior personal injury settlement.

¶ 16 As a final matter, we note that the causes of action for personal injury and wrongful death are different, and are aimed at compensating different types of loss. A wrongful death action compensates heirs for their personal losses—i.e., those losses that stem from losing the deceased person—whereas a personal injury action compensates the injured person for losses stemming from her injury. In a wrongful death action, the loss is often not economic in nature: it is the "loss of society, love, companionship, protection and affection."[42] A personal injury action is aimed more directly at compensating an individual for losses that she has suffered as a result of negligence. This squarely includes lost wages, medical expenses and other personal economic consequences of an injury.

¶ 17 In situations like this, where the decedent successfully prosecuted an action for her personal injuries, we emphasize that double recovery is impermissible. In other words, in a wrongful death action following the decedent's successful personal injury action, it would be inappropriate to extract the same damages

---

death based upon personal injuries arising out of medical malpractice. Further, this statute is more specific than the general wrongful death statute of limitations, applying as it does only to wrongful death actions arising out of medical malpractice. Therefore, we hold that the two-year statute of limitations governing medical malpractice actions covers this action for wrongful death arising out of medical malpractice.").

[41] *Bybee*, 2008 UT 35, ¶¶ 21, 23–25.

[42] *Jones*, 641 P.2d at 107–08.

from the defendants twice.[43] If Ms. Warren already received damages for lost wages and the like, on remand we caution that it would be improper for the court to award those damages to the heirs. Again, the purpose of the wrongful death action is to compensate the heirs for their losses—and if the injured person was already awarded damages for lost wages, the heirs cannot be said to have lost those.

¶ 18 We recognize that "to assign a monetary value to loss of comfort, society, love, companionship, advice, and protection" is extremely "difficult" and "impossible to fit into a mathematical formula"—yet this is what our courts are tasked with doing in such cases.[44] The process "requires great understanding of those human values which can make interpersonal relationships so precious" and in order to avoid overzealous penalties, the method for awarding damages in a wrongful death action must be carefully "tempered and confined so as to strike a just balance."[45] On remand, if the Heirs prevail, the court must carefully consider the proper award of damages and must take care to ensure that the Defendants are not forced to pay twice for the same losses.

## CONCLUSION

¶ 19 Utah Code section 78B-3-106 states plainly that "when the death of a person is caused by the wrongful act or neglect of another, his heirs . . . may maintain an action for damages." The statutory language is clear and unambiguous, and does not indicate that the cause of action is in any way tied to the decedent's own personal injury action. We therefore conclude that wrongful death is an independent cause of action not barred by the existence of a final judgment in the decedent's underlying

---

[43] *See, e.g.*, RESTATEMENT (SECOND) OF JUDGMENTS § 46 cmt. c (1982) ("In any event, double recovery of damages is not permitted. In some jurisdictions this is done by defining the measures of recovery in the respective actions in mutually exclusive terms. In others, where the measures of damage overlap, the beneficiaries are precluded from seeking items of damage recoverable by the decedent in his action.").

[44] *Jones*, 641 P.2d. at 108.

[45] *Id.*

personal injury suit. We note also that article XVI, section 5 of the Utah Constitution requires that we robustly protect Utah's wrongful death cause of action from attempts to limit it. Accordingly, we affirm the district court's ruling and remand for further proceedings consistent with this opinion.

————————