*This opinion is subject to revision before*
*publication in the Pacific Reporter*

**2015 UT 87**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

FLOWELL ELECTRIC ASSOCIATION, INC., and
DIXIE ESCALANTE RURAL ELECTRIC ASSOCIATION, INC.,
*Appellees,*

*v.*

RHODES PUMP, LLC,
*Appellant.*

No. 20130834
Filed September 25, 2015

Fourth District, Spanish Fork
The Honorable Donald J. Eyre, Jr.
No. 1210300019

Attorneys:

Susan Black Dunn, Kathleen M. Liuzzi, Salt Lake City,
for appellees

James R. Black, Matthew J. Black, Salt Lake City,
for appellant

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUSTICE DURHAM joined.

JUSTICE HIMONAS, opinion of the Court:

### INTRODUCTION

¶ 1   This case is about a demand for indemnification under the High Voltage Overhead Lines Act (HVOLA). UTAH CODE §§ 54-8c-1 to -6. HVOLA prohibits any activity within ten feet of a high voltage overhead line unless the public utility operating the line has been notified of the "intended activity" and, together with the party responsible for the triggering activity, has implemented "mutually satisfactory" safety precautions. *Id.* § 54-8c-2(1). If the party responsible for the activity violates HVOLA and, as a result,

a person or thing comes into contact with the line, then that party "is liable to the public utility . . . for all liability incurred by the public utility as a result of [the] contact." *Id*. § 54-8c-4(3).

¶ 2    Based on these provisions, Flowell Electric Association, Inc. (FEA), and Dixie Escalante Rural Electric Association, Inc., (collectively, Flowell) sought indemnification from Rhodes Pump II, LLC, (Rhodes) for liability to Brian Wade incurred by Flowell. Mr. Wade, in the course of servicing a well situated under one of Flowell's high voltage lines, came into contact with the line, which resulted in a severe electric shock and, ultimately, the amputation of both of his legs. Mr. Wade sought and received workers' compensation benefits from his employer, Rhodes, on whose behalf he was acting at the time of the accident. He also filed a tort suit against Flowell, alleging negligence and breach of warranty and requesting punitive damages.[1] A jury found that Flowell had acted negligently and awarded Mr. Wade both compensatory and punitive damages. Flowell then brought this action for HVOLA indemnification against Rhodes. The district court concluded that Rhodes had failed to give Flowell adequate notice of its intended activity and therefore granted Flowell summary judgment. Rhodes timely appealed.

¶ 3    We first address the legal challenges Rhodes brings to HVOLA and conclude that HVOLA does apply to Rhodes and is not unconstitutional. But because we conclude there exists genuine issues of material fact regarding Rhodes's notice, we reverse the grant of summary judgment and remand for further proceedings.

## BACKGROUND

¶ 4    On May 20, 2002, Mr. Wade and Darrin Rhodes went to service the Sundown Well, which is located in Meadow, Utah.[2] In

---

[1] Mr. Wade and his wife first filed the tort suit against FEA. They added Dixie as a defendant after learning that the utility employees involved in the accident were leased by Dixie to FEA.

[2] In evaluating cross-motions for summary judgment, we recite the facts in the light most favorable to the losing party. *Keith v. Mountain Resorts Dev., L.L.C.*, 2014 UT 32, ¶ 16 n.10, 337 P.3d 213. Here, the parties stipulated to almost all of the facts but agreed to disagree about one of them—namely, whether Rhodes was to call

(cont.)

the course of performing their work, they raised the boom on their well-servicing truck to within three or four feet of Flowell's high voltage lines. At that point, Mr. Rhodes contacted Flowell and informed Flowell's operations manager and lineman, Steve Iverson, that he had raised the boom near the high voltage lines. Mr. Iverson responded that he and another lineman, Neil Stevens, would come to the Sundown Well within a couple of hours to assist.

¶ 5    Mr. Iverson and Mr. Stevens arrived at the site and placed three "cover-ups" on the energized line to cover fifteen feet of the line, "centering them with the raised boom." Mr. Iverson testified that he instructed Mr. Rhodes and Mr. Wade "not to move the boom from its current position" and to contact him before lowering the boom so that he could return and "assist" the men in "safely lowering" it. Mr. Rhodes and Mr. Wade denied receiving the instruction. Mr. Rhodes and Mr. Wade "completed their work of installing the pipes and putting the well back together." Without moving the boom from its initial location, they loaded their equipment back onto Mr. Rhodes's truck. Then, without notifying anyone, they "began lowering" the boom. At that point, Mr. Wade noticed that they had forgotten to load certain equipment—the "well collars."[3] Mr. Rhodes again raised the boom into the air near the overhead line.[4] They loaded the

_____

Flowell before lowering the boom. We flag that disputed fact and ultimately conclude that it is material to the disposition of this matter. *See infra* ¶ 31.

[3] We note that the record in this case is sparse and that the parties have not provided us with background information on the nature of the well, the details of the work Rhodes was doing there, or the nature of the equipment that was used. We have taken what facts we do have almost entirely from the parties' list of undisputed facts.

[4] The undisputed facts do not explicitly provide that the boom was raised to within ten feet of the overhead line the second time, only that it was raised into the air and then came in contact with the line while being lowered. We assume from the contact that the boom came within ten feet of the line at some point the second time it was raised. Another basis for this assumption is that the parties present no argument about proximity to the overhead line even though the district court's finding of a violation of HVOLA

(cont.)

well collars and began to lower the boom a second time. As they were lowering it, the boom came in contact with the power line, resulting in Mr. Wade's injury.[5]

¶ 6    Mr. Wade and his wife filed the tort suit against Flowell in April 2006. The case went to trial in 2010. The jury found in favor of Mr. Wade and awarded him $9,841,627.03 in compensatory damages and $10,000 in punitive damages.

¶ 7    The following year, Flowell filed this action against Rhodes for indemnification under HVOLA. The parties filed cross-motions for summary judgment. On July 31, 2013, the district court entered summary judgment in favor of Flowell. Rhodes timely appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶ 8    We review a district court's grant of summary judgment for correctness, giving no deference to its conclusions of law. *Keith v. Mountain Resorts Dev., L.L.C.*, 2014 UT 32, ¶ 16, 337 P.3d 213. Summary judgment is appropriate when there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." UTAH R. CIV. P. 56(c). When evaluating the propriety of summary judgment on cross-motions for summary judgment, we view the facts and any reasonable inferences to be drawn therefrom in the light most favorable to the losing party. *Keith*, 2014 UT 32, ¶ 16 n.10.

**ANALYSIS**

¶ 9    Rhodes contends that the district court erred in granting summary judgment in favor of Flowell for a variety of reasons. We first address Rhodes's claim that the indemnification action was not timely filed under the statute of limitations. Second, we address Rhodes's claim that the exclusive remedy provision of the Workers' Compensation Act (WCA) precludes Flowell from bringing an HVOLA indemnification action against Rhodes. Third, we address Rhodes's argument that, as applied, HVOLA violates the principles of due process and equal protection

---

was based on the alleged lack of notice the second time the boom was raised.

[5] It is unclear from the record how or why the boom came into contact with the power line.

guaranteed under the United States and Utah Constitutions. Fourth and finally, we analyze Rhodes's argument that summary judgment was improperly granted. Rhodes's argument on this issue is twofold. It contends: (1) Rhodes did not violate HVOLA and therefore cannot be required to indemnify Flowell; and (2) in a separate tort case against Flowell, a jury found that Flowell had caused Mr. Wade's injuries through gross negligence and thus Rhodes should not be required to indemnify Flowell for public policy reasons. We reject Rhodes's statute of limitations, WCA exclusive remedy, and constitutional arguments. We also hold that a public utility's gross negligence does not preclude indemnification under HVOLA. But because we conclude that there are unresolved genuine issues of material fact regarding whether Rhodes violated HVOLA, we reverse the grant of summary judgment and remand for further proceedings.

## I. FLOWELL TIMELY FILED ITS HVOLA INDEMNIFICATION ACTION

¶ 10 HVOLA grants public utilities a right of action for indemnification when a "responsible party" fails to follow HVOLA's requirements. UTAH CODE § 54-8c-4. The parties suggest the period of limitations applicable to an HVOLA indemnification action can be found at Utah Code section 78B-2-307(1)(a), which provides that an action based on a "liability not founded upon an instrument in writing" must be brought within four years. They are mistaken. The relevant statute of limitations for an HVOLA action is found at Utah Code section 78B-2-305(4), which states that "[a]n action may be brought within three years . . . for a liability created by the statutes of this state." Although section 78B-2-307(1)(a) might appear to apply because the liability here is not based upon a written instrument, section 78B-2-305(4) specifically applies to liabilities created by statutes. And "[w]ell-established principles of statutory construction" tell us that the "more specific statute governs." *Pan Energy v. Martin*, 813 P.2d 1142, 1145 (Utah 1991). Here, the cause of action and associated liability are created wholly by a statute—HVOLA. *See* UTAH CODE § 54-8c-4. Thus, the relevant statute of limitations is three years. *Id.* § 78B-2-305(4).

¶ 11 The parties' error does not influence the outcome of this case, nor would their arguments have changed absent that error. Rhodes argues that Flowell's cause of action for indemnification under HVOLA accrued on the day of the accident, more than four

years before Flowell attempted to include Rhodes in the tort case. Flowell argues that the statute of limitations could not have begun to run until Flowell had actually "incurred" liability, which was when the jury returned its verdict in the tort case against Flowell. We agree with Flowell.

¶ 12   A cause of action accrues when it "becomes remediable in the courts"—or, in other words, when "all of the elements that must be proved at trial under the statute allegedly creating liability on the part of the defendant are existing and may be established." *State v. Huntington-Cleveland Irrigation Co.*, 2002 UT 75, ¶ 24, 52 P.3d 1257 (citation omitted). Here, Flowell could not satisfy all the elements of its indemnification claim against Rhodes until Flowell was held liable for the injuries to Mr. Wade. Because Flowell had not actually "incurred" any liability "as a result of" Mr. Wade's injurious contact with the high voltage overhead line until the jury rendered its verdict, the statute of limitations did not begin to run until then. UTAH CODE § 54-8c-4(3). The jury in the tort case issued a verdict against Flowell on January 3, 2011. Flowell filed its indemnification action five months later, in June 2011. Because Flowell filed its HVOLA action within five months of the jury verdict, the indemnification action was timely filed.

## II. THE WORKERS' COMPENSATION ACT'S EXCLUSIVE REMEDY PROVISION DOES NOT PRECLUDE LIABILITY UNDER HVOLA

¶ 13 Rhodes argues that the WCA's exclusive remedy provision shields it from a civil suit brought under HVOLA. UTAH CODE § 34A-2-105(1). Because we conclude that the WCA does not apply here, we disagree.

¶ 14 Rhodes argues that because the action stems from an injury suffered by its employee, any liability Rhodes would otherwise have incurred through HVOLA is subsumed by the WCA. The "exclusive remedy" provision of the WCA provides that "[t]he right to recover compensation pursuant to [the WCA] for injuries sustained by an employee" is the "exclusive remedy against the employer and is the exclusive remedy against any officer, agent, or employee of the employer." UTAH CODE § 34A-2-105(1). On the other hand, HVOLA provides that "[a] responsible party is liable to the public utility . . . for all liability incurred by the public utility" stemming from the responsible party's violation of the provisions of HVOLA. UTAH CODE § 54-8c-4(3).

Here, the "responsible party" is Rhodes, and we are asked to determine whether Rhodes can be held liable under HVOLA even though Rhodes's employee's injury underlies the liability incurred by the public utility.[6] We hold that Rhodes can be held liable under HVOLA.

¶ 15   An independent statutory or contractual cause of action between a third party and an employer is not barred by the WCA where that action is not brought "on account of" or "based upon" the accident, injury, or death of the employee. *Snyder v. PacifiCorp*, 316 F. Supp. 2d 1247, 1252–53 (D. Utah 2004) (internal quotation marks omitted). This curb on the scope of the WCA's exclusive remedy provision scope is grounded in the language of the statute. To be sure, the WCA provides that the legal responsibility of the employer is "in place of any and all other civil liability whatsoever." UTAH CODE § 34A-2-105(1). The WCA goes on to specify that "an action at law may not be maintained against an employer . . . *based upon* any accident, injury, or death of an employee." *Id.* (emphasis added). But this preclusive language is limited to liability that arises "*on account of any accident* or injury or death . . . incurred by the employee in the course of or because of or arising out of the employee's employment." *Id.* (emphasis added). As we clarified in *Shell Oil Co. v. Brinkerhoff-Signal Drilling Co.*, "[t]he exclusive remedy provision in the Workmen's Compensation Act does not govern all relationships between a third party and . . . the employer." 658 P.2d 1187, 1191 (Utah 1983). Consequently, we held that a third-party's indemnification claim against an employer was not barred by the exclusive remedy provision of the WCA where there was an express indemnification provision in the parties' contract. *Id.* We allowed the third-party contractual indemnification action on the basis that such an action is "not 'on account of' an employee's injury, nor is it an action 'based upon' an employee's injury"; "[r]ather," we explained, "it is an action for *reimbursement* based upon an

---

[6] Rhodes has not argued that it is not the "responsible party" under HVOLA, UTAH CODE § 54-8c-4(3), nor does it appear it could, as the statute defines the responsible party as "any person who contracts to perform, is responsible for the performance of, or has control over, any function or activity at any location." UTAH CODE § 54-8c-1(6).

express contractual obligation between the employer and the third-party plaintiff." *Id.* at 1190–91 (emphasis added). The third-party claim did not implicate the WCA's exclusive remedy clause because a "contractual obligation is independent of any statutory duty the employer may owe his employee" under the WCA. *Id.* at 1191.

¶ 16 The reasoning in *Shell Oil* is highly instructive here. Much like an indemnity clause in a contract between the employer and a third party, HVOLA provides an independent obligation that is distinct from the WCA's exclusive remedy provision. In other words, by enacting HVOLA, "the legislature has mandated a relationship between public utilities and responsible parties," and, "in effect," has "written the contract between responsible parties and the public utility." *Snyder*, 316 F. Supp. 2d at 1252. Accordingly, the WCA does not preclude an entity's liability under HVOLA.

¶ 17 Rhodes acknowledges that the United States District Court for the District of Utah addressed a nearly identical question in *Snyder*, 316 F. Supp. 2d at 1248–49. There, an employee was burned during the course of his employment when a crane boom came in contact with an overhead power line. *Id.* at 1248. There too, the employer argued that PacifiCorp (the public utility that owned the power line) could not bring a statutory claim of indemnity under HVOLA due to the WCA's exclusive remedy provision. *Id.* at 1249. The *Snyder* court reasoned that *Shell Oil* presented a good analogy, noting that "the statutory duty to indemnify would create no more of a conflict than the contractual right to indemnity allowed in *Shell [Oil].*" *Id.* at 1253. The *Snyder* court also pointed out that "[e]very court that has addressed this specific issue has held that the exclusive remedy provision of the workers' compensation statute does not bar an action for indemnity based upon statutes comparable to the HVOLA." *Id.* at 1252. Thus, the district court concluded that the exclusive remedy provision did not preclude an electric company from pursuing an employer for indemnification under HVOLA. *Id.* at 1254.

¶ 18 Rhodes acknowledges that *Snyder* and the "line of cases" it cites "appears on the surface to present an argument from multiple other jurisdictions contrary to application of WCA immunity to HVOLA" claims. But it attempts to distinguish these cases by pointing out that in this case, a jury found that Flowell had been negligent. We fail to see how the jury's finding of

negligence bears on the statutory question of whether the WCA's exclusive remedy provision bars this HVOLA action. And Rhodes has not provided this court with any factually similar case where an HVOLA-type statute was found to be barred by a workers' compensation act, nor have we been able to find one. Moreover, we find the reasoning in *Shell Oil* and *Snyder* persuasive. As in *Shell Oil*, Flowell's indemnification action is for reimbursement—not compensation—pursuant to an independent, "express" statutory "obligation" between the parties. *Shell Oil Co.*, 658 P.2d at 1190–91. Accordingly, the action n is neither brought "on account of" nor "based upon" Mr. Wade's injuries—and the WCA is not implicated. UTAH CODE § 34A-2-105(1); *see also Snyder*, 316 F. Supp. 2d at 1252. We therefore hold that the WCA does not bar an indemnification action under HVOLA.[7]

## III. HVOLA DOES NOT VIOLATE DUE PROCESS OR EQUAL PROTECTION AS APPLIED TO RHODES

### *A. Due Process*

¶ 19 Rhodes argues that HVOLA, as applied, deprives it of a property right—the exclusive remedy provision of the WCA—without due process of law. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[8] The first step in showing a violation

---

[7] Because we hold that the WCA and HVOLA are not in conflict, we need not address the parties' public policy and other arguments concerning which statute should control. We also need not address Rhodes's arguments concerning the Liability Reform Act (LRA). *See* UTAH CODE § 78B-5-818(4)(b) (stating that a person immune from suit cannot be held liable even if fault is allocated to that person in a given tort action). As explained, Rhodes is not immune from suit under HVOLA despite being immune from a tort or other suit under the WCA, and thus, in this context, the LRA does not apply.

[8] Rhodes characterizes its due process claim as arising from both the United States and Utah Constitutions. Though the text of the two provisions is essentially identical, *see* UTAH CONST. art. I, § 7 ("No person shall be deprived of life, liberty or property, without due process of law."), "we do not presume that federal court interpretations of federal Constitutional provisions control the meaning of identical provisions in the Utah Constitution."

(cont.)

of the Due Process Clause is to show that there has been a deprivation of life, liberty, or property. Rhodes fails to make this showing and its claim accordingly fails.

¶ 20   "[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). But HVOLA deprives Rhodes of neither a cause of action nor its rights under the WCA. The exclusive remedy provision and HVOLA are distinct statutory provisions that coexist without conflict. As explained, an action under HVOLA is not "based upon" or "on account of" the employee's injury: it stems from an independent source—the liability the legislature has imposed on individuals through HVOLA. *See* UTAH CODE § 54-8c-4(3) ("A responsible party is liable to the public utility . . . if . . . the responsible party causes . . . an activity in violation of any provision of this chapter . . . .").[9] Here, the Utah Legislature chose to impose an obligation

---

*State v. Briggs*, 2008 UT 83, ¶ 24, 199 P.3d 935. That said, "cursory references to the state constitution within arguments otherwise dedicated to a federal constitutional claim are inadequate." *State v. Worwood*, 2007 UT 47, ¶ 18, 164 P.3d 397. We will "refrain[] from engaging in state constitutional law analysis unless an argument for different analyses under the state and federal constitutions is briefed." *Id.* ¶ 16 (internal quotation marks omitted). Because Rhodes frames its constitutional analysis in terms of the United States Constitution, we will do the same.

[9] We also reject Rhodes's open courts argument. *See* UTAH CONST. art. I, § 11; *see generally Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 680 (Utah 1985). Rhodes argues that HVOLA violates Utah's open courts protections by abrogating the WCA exclusive remedy defense without providing a reasonable alternative defense and asks us to apply the *Berry* test. *Berry*, 717 P.2d at 680 ("First, section 11 [of the Declaration of Rights] is satisfied if the law provides an injured person an effective and reasonable alternative remedy 'by due course of law' for vindication of his constitutional interest. . . . Second, if there is no substitute or alternative remedy provided, abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective."). As Rhodes acknowledges, the first question one must ask before applying the *Berry* test is whether

(cont.)

to indemnify public utilities upon anyone—including an employer—who violates the provisions of HVOLA. UTAH CODE § 54-8c-4. We cannot say that the statute thereby deprives Rhodes of due process of law.[10]

### B. Equal Protection

¶ 21 The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Similarly, article I, section 24, of the Utah Constitution states that "[a]ll laws of a general nature shall have uniform operation." *See Malan v. Lewis*, 693 P.2d 661, 669 (Utah 1984) ("Although their language is dissimilar, these provisions embody the same general principle . . . ."). As with its due process argument, Rhodes raises its equal protection and uniform operation of laws claim under both the United States and Utah Constitutions but confines its analysis to the United States Constitution. We are not required to follow U.S. constitutional law when we interpret the Utah Constitution, but because Rhodes has raised but not briefed a separate Utah constitutional claim, we will evaluate the issue solely under the Equal Protection Clause of the Fourteenth Amendment. *See State v. Worwood*, 2007 UT 47, ¶ 16, 164 P.3d 397.

¶ 22 The most fundamental principle of equal protection is that those who are "similarly situated should be treated similarly" and those who are "in different circumstances should not be treated as if their circumstances were the same." *Malan*, 693 P.2d at 669. "General rules that apply evenhandedly to all persons

_____

the legislation abrogates a cause of action. *Laney v. Fairview City*, 2002 UT 79, ¶ 49, 57 P.3d 1007. But HVOLA does not abrogate a cause of action—it grants a cause of action to public utilities that incur liability as a result of a violation of HVOLA. As explained herein, HVOLA and WCA are independent. Accordingly, Rhodes's open courts argument fails.

[10] Additionally, Rhodes has not been denied due process in the legal proceedings. Rhodes has had the opportunity to contest every issue raised in this matter, including whether it violated HVOLA, whether the injury was caused by such a violation, whether the WCA's exclusive remedy provision forecloses an action against Rhodes, etc. At no point in the proceedings has Rhodes been denied any of the process due to it.

within the jurisdiction unquestionably comply with [the] principle [of equal protection of the laws]." *N.Y.C. Transit Auth. v. Beazer*, 440 U.S. 568, 587 (1979). In order to determine whether there is an equal protection problem, we must first decide whether the law applies evenhandedly or whether it makes a classification. *Id.* at 587–88 ("Only when a governmental unit adopts a rule that has a special impact on less than all the persons subject to its jurisdiction does the question whether this principle [of equal protection] is violated arise."). Rhodes claims that HVOLA creates two classes: employers who benefit from the WCA's exclusive remedy provision and employers who do not because they may be sued under HVOLA. In essence, Rhodes asks us to read HVOLA in combination with the WCA and find that, together, they create an impermissible classification between groups of employers. This we cannot do.

¶ 23   In federal equal protection claims, "courts exercise strict scrutiny of legislative classifications when fundamental constitutional rights are affected or suspect classifications are created." *Malan*, 693 P.2d at 674 n.17. Benefitting from WCA's exclusive remedy provision is not a fundamental constitutional right, and the purported classes are not based on suspect classifications. Therefore, the classification created through HVOLA is subject to rational basis review. *See State v. Canton*, 2013 UT 44, ¶ 36, 308 P.3d 517 ("[M]ost classifications are presumptively permissible, and thus subject only to 'rational basis review.' . . . [O]ther classifications [such as discrimination on the basis of a suspect class] are so generally problematic . . . that they trigger heightened scrutiny." (citation omitted)). The classification easily passes rational basis review because imposing restrictions upon those who bring objects near dangerous high voltage power lines is an eminently reasonable way for the legislature to pursue the goal of increasing safety and accountability around such lines. *See Malan* at 671 ("If the relationship of the classification to the statutory objectives is unreasonable or fanciful, the discrimination is unreasonable."). Thus, the Equal Protection Clause is not violated.

## IV. DISPUTED AND UNKNOWN FACTS PRECLUDE SUMMARY JUDGMENT

¶ 24  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." UTAH R. CIV. P. 56(c).

Despite the parties' stipulations, there are material facts in this case that are either disputed or have not yet been determined. Under HVOLA, a responsible party is "liable to the public utility" for "all liability incurred" if the responsible party "causes, permits, or allows a function or an activity in violation of" HVOLA and "as a result," contact with the overhead line occurs. UTAH CODE § 54-8c-4(3). A party is liable under HVOLA when four elements are satisfied: (1) The responsible party must have "cause[d], permit[ted], or allow[ed] a function or an activity" that (2) was "in violation of any provision of [HVOLA]," and (3) "as a result," (4) "a physical or electrical contact with a high voltage overhead line occur[red]." *Id.* Factual disputes exist regarding the second element, whether Rhodes violated HVOLA, and the third element, whether the alleged violation by Rhodes "result[ed]" in the contact. *Id.*

¶ 25 The question of whether Rhodes violated HVOLA requires two factual determinations. First, whether Rhodes gave adequate notice of the intended activity under Utah Code section 54-8c-2(1)(a), and second, whether Rhodes complied with and "completed" the "mutually satisfactory precautions for the activity" under section 54-8c-2(1)(b). Finally, we flag a third area of factual dispute: causation. Namely, there remain undetermined facts concerning what (or who) caused Mr. Wade to come in contact with the overhead power line. These unresolved factual issues preclude the entry of summary judgment. We therefore reverse the grant of summary judgment and remand for further proceedings.

*A. Notice of Intended Activity*

¶ 26 It is undisputed that Rhodes notified Flowell that it was doing work within ten feet of the power lines near the Sundown Well, and it is undisputed that Flowell implemented safety precautions in response to that information. However, the district court found that Rhodes violated the notice provision of HVOLA when it failed to notify Flowell that it was raising the boom a second time. In essence, the court held that each individual time Rhodes moved the boom and brought it within ten feet of the power line, a separate notice was required under Utah Code section 54-8c-2(1)(a). While this may ultimately turn out to be the case, we cannot reach this conclusion as a matter of summary judgment on the basis of the undisputed facts. Under the statute, a party need only notify the public utility of its "intended activity."

UTAH CODE § 54-8c-2(1)(a). Unfortunately, it is not at all clear from the record what Rhodes told Flowell it intended to do.

¶ 27   Utah Code section 54-8c-2(1)(a) states that no person or thing may be brought within ten feet of a high voltage overhead line unless the responsible party first "notifie[s] the public utility operating the high voltage overhead line of the intended activity." The statute also specifies that "[t]he notification required in Subsection (1)(a) . . . shall include the location and duration of the proposed activity." *Id.* § 54-8c-2(2). The district court held that Rhodes violated this requirement when it failed to notify Flowell before it raised the boom a second time. The court reasoned that additional notice was required because there was "no way to guarantee that the location of the second raising was in the same place as the first." But we do not believe that Rhodes was necessarily required to give additional notification in order to raise the boom a second time. It is undisputed that Rhodes's "intended activity" required raising the boom near the overhead line. The question is whether the second raising of the boom was communicated to Flowell as part of Rhodes's intended activity and was thus within the scope of the notice.[11] If Rhodes expressed to Flowell that its intended activity involved raising the boom more than once, then there was no violation of the notice requirement of Utah Code section 54-8c-2(1)(a).

¶ 28 Whether a given notification covers the responsible party's activities near high voltage lines is a fact-intensive question that hinges on the relationship between the notice given and the responsible party's actual activities at the site. *See id.* § 54-8c-2.[12] If a responsible party has notified the public utility of

---

[11] By requiring "communication" of the intended activity, we do not mean to foreclose the possibility that accepted trade language or knowledge may come into play. For example, if a responsible party gave the public utility notice that it would be trimming trees near a high voltage line, it is possible that the utility company would then know that the intended activity necessarily involves such activities as moving a cherry picker around frequently, using long-handled tools, etc. But this inquiry would be highly fact dependent.

[12] HVOLA's requirements are interrelated. The statute explicitly ties the provisions regarding notice and the intended

(cont.)

certain intended activity within ten feet of a power line and then wants to take actions outside of the scope of that intended activity, then that party would be required to renotify the utility. For example, if Rhodes told Flowell that it was going to service the well by raising a boom over the well, it would unquestionably be outside of the scope of that notice for Rhodes to drive ten miles down the road and raise a boom next to the power lines there.

¶ 29 The district court erred when it concluded that on the record facts here Flowell violated the notice provision as a matter of law simply by reraising the boom. On remand the court must determine the nature of the notice Rhodes gave to Flowell.[13] If Rhodes's act of bringing the boom within ten feet of the power lines a second time was outside of the scope of the intended activity it initially communicated to Flowell, then Rhodes violated section 54-8c-2(1)(a) of HVOLA by failing to notify Flowell of its intended activity.

¶ 30 Because a factual issue remains regarding whether Rhodes adequately notified Flowell of its "intended activity," we reverse the grant of summary judgment on this issue.

---

activity together, stating that the party must notify the utility of the "intended activity" and then both the party and the utility must "have completed mutually satisfactory precautions for *the activity*," before a person or thing may be brought within ten feet of the high voltage line. UTAH CODE § 54-8c-2(1) (emphasis added). Thus, the notice given is directly related to the nature of the "mutually satisfactory precautions" that the party and the utility must complete. *Id.* And the burden is on the responsible party to communicate its "intended activity" to the utility so that proper safety precautions can be undertaken. *Id.* § 54-8c-2(1)(a).

[13] The record indicates that Mr. Rhodes informed Mr. Iverson that he had raised the boom near the overhead line and that Mr. Iverson placed three covers over the energized line that covered about fifteen feet of the line and were centered above the boom's location at that time. What we do not know is whether Mr. Iverson understood that Rhodes's work would require raising and lowering the boom multiple times or whether Flowell knew there was a possibility that the boom would change positions relative to the power lines and covers.

### B. Completion of Mutually Satisfactory Precautions

¶ 31 An issue of fact also exists as to whether Rhodes was to contact Flowell before lowering the boom. Mr. Iverson testified at trial that he instructed Mr. Rhodes and Mr. Wade to contact him before lowering the boom. Flowell contends this contact "was part of the 'mutually satisfactory precautions' required by HVOLA." Rhodes disputes this claim, stating that Mr. Iverson gave no such instruction. We agree with Flowell that if the parties had decided that Rhodes would contact Flowell before lowering the boom, that arrangement formed a part of the agreed-upon safety precautions. But because there is a dispute between the parties as to what, if anything, was supposed to happen before Rhodes lowered the boom, there remains a disputed issue as to whether Rhodes violated safety precautions.[14]

### C. Causation

¶ 32 Under Utah Code section 54-8c-4(3), a responsible party is only liable to the public utility if the party's HVOLA violation "result[s]" in a "physical or electrical contact with a high voltage overhead line." Rhodes argues that it should not be subject to HVOLA indemnification where the jury in the tort case determined that Flowell was grossly negligent and "the sole cause" of Mr. Wade's injuries. Rhodes's arguments are built on unsteady ground. First, the factual question of whether Rhodes's alleged violation of HVOLA caused the contact with the power line has not been litigated. There was a separate tort case, but Rhodes has not argued that those determinations control. On this point, Rhodes's arguments are not well developed and the court has been left to guess at the legal basis for the significance that Rhodes attributes to the jury finding in the tort case. At best,

---

[14] Rhodes further argues that even if this instruction were given and understood, it is not material for the purposes of HVOLA indemnification, and therefore not a material fact, because a violation of the safety plan would not constitute a violation of HVOLA. Flowell did not respond to this argument, thus risking that we would be persuaded by Rhodes's argument on this particular issue. However, we have elected to exercise our discretion and pass on the issue in light of our determination that a number of material issues of fact remain that preclude summary judgment.

Rhodes suggested—but failed to argue—that principles of collateral estoppel absolve Rhodes of liability under HVOLA. This court cannot allow itself to be turned into a "depository" where the appellant may "dump the burden of argument and research." *Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (citation omitted). Therefore, we assume without deciding that collateral estoppel does not apply in this case, and therefore we give no weight to the facts and determinations reached in the tort case.

¶ 33 Because the findings in the tort case do not control, and because there have been no findings on causation in this case, our inquiry might end here, with a remand for further factual development. However, we write further in order to address the nuances of Rhodes's argument concerning the effect of what it terms Flowell's "gross negligence." Rhodes argues that, as a matter of public policy, indemnification under HVOLA should be per se barred where the public utility acted in gross negligence. It contends that the issue of Flowell's gross negligence was settled in the tort case, but as explained, Rhodes has not made a valid argument that those findings control in the instant action. Thus, a key premise underlying Rhodes's argument is gone. We nevertheless note that a public utility's negligent actions will not per se preclude a responsible party's obligation to indemnify the public utility under HVOLA. *See* UTAH CODE § 54-8c-4(3). This is because the statute imposes liability on a party that violates HVOLA and as a result causes the public utility to suffer damages, but it does not contain an exception for the public utility's negligence. Liability under Utah Code section 54-8c-4(3) requires only that the party (1) violated HVOLA, (2) the violation resulted in a physical or electric contact with a high voltage overhead line, and (3) the public utility incurred damages as a result of the contact.

¶ 34 Because we will not alter the meaning of a statute by judicial fiat, we must try to interpret it in accordance with the legislature's intent. *See Heaps v. Nuriche, LLC*, 2015 UT 26, ¶ 13, 345 P.3d 655. The best indication of legislative intent is the statute's plain language. *Id.* In evaluating the language of a statute, we have long held that "omissions in statutory language should be taken note of and given effect." *Biddle v. Wash. Terrace City*, 1999 UT 110, ¶ 14, 993 P.2d 875 (internal quotation marks omitted); *see also Riggs v. Georgia-Pacific LLC*, 2015 UT 17, ¶ 10, 345 P.3d 1219 ("[W]e seek to give effect to omissions in statutory language by

presuming [them] purposeful." (internal quotation marks omitted)). The HVOLA indemnification provision reads:

> A responsible party is liable to the public utility operating the high voltage overhead line for all damages to the facilities and for all liability incurred by the public utility as a result of any contact if: (a) the responsible party causes, permits, or allows a function or an activity in violation of any provision of this chapter; and (b) as a result, a physical or electrical contact with a high voltage overhead line occurs.

UTAH CODE § 54-8c-4(3). This language is not ambiguous, and it does not contain an exception for situations where the public utility has acted negligently—grossly or otherwise. We presume the legislature's omission of any exception to mean that the legislature did not intend to provide one.

¶ 35  For authority, Rhodes cites our well-established rule that indemnification agreements are enforceable only so long as the agreement is clear and unambiguous and does not violate public policy. *See Rothstein v. Snowbird Corp.*, 2007 UT 96, ¶ 6, 175 P.3d 560. However, this rule applies to contracts, not statutes. In this specific context, this is an important distinction. For although historically we have been willing to intervene in private contracts in very limited ways through exercise of our common law authority, we are not similarly free to "supplant the interests" of the legislature in pursuit of judicial notions of public policy. *Id.* ¶ 8. When it comes to statutes, our role is to "interpret[] and implement[] the policies enacted into law by the legislature." *McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶ 12, 274 P.3d 981. And since Utah Code section 54-8c-4 provides no exception to the indemnification provision based on a public utility's negligence, we do not consider such negligence in our analysis of causation under section 54-8c-4(3)(b).

¶ 36  Finally, in addressing the gross negligence issue, it has become apparent to the court that the question of causation is a crucial one that was not litigated below. Rhodes's arguments, though incomplete, suggest that it believes that the causation requirement of Utah Code section 54-8c-4(3)(b)—that the contact with the high voltage line occurred as a result of the HVOLA violation—has not been satisfied. We agree that the undisputed

facts do not establish whether an HVOLA violation caused the contact. And because the question of causation is unresolved, we conclude that the causation issue is an additional reason to reverse the grant of summary judgment and identify it for the district court to address on remand. In so doing, we note that the exact cause of Mr. Wade's contact with the power line is not in the record. Flowell argues that Rhodes "must have done something" to the safety configuration placed on the overhead lines that caused them to shift in relation to the boom's position. Rhodes argues that circumstances outside of Rhodes's control could have led to a shift in the configuration,[15] or, alternatively, that Flowell did something to cause the contact—perhaps by negligently implementing the safety measures. Rhodes counters that it is Flowell's duty, as the public utility, to continue the protective measures until the project is complete and that therefore Flowell violated HVOLA—not Rhodes. *See* UTAH CODE § 54-8c-2(6)(b). In short, the cause of the contact with the overhead line is an essential but unresolved factual issues rendering summary judgment inappropriate.

## CONCLUSION

¶ 37   Rhodes's arguments that HVOLA does not or should not apply to Rhodes fail. But because there are unresolved factual issues that bear on the key statutory questions of (1) whether Rhodes actually violated HVOLA and (2) whether Rhodes's violation, if any, caused the accident, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

––––––––––––

---

[15] For example, there was evidence in the tort case suggesting that it was a very windy day.